## Richmond.

BOYD, TRUSTEE, AND OTHERS v. McKEE AND OTHERS.

JANUARY 17, 1901.

Absent, Phlegar* and Buchanan,† JJ.

1. INSURANCE—*Warehousemen—Apportionment of Insurance Money in Case of Loss.*—If a warehouseman, or other person having goods of others in his possession for storage or sale on commission, insure his own property along with that of others held in trust by him, he may, upon the happening of a loss, recover the full amount of the insurer; but, after paying his own charges and the cost of insurance, including attorney's fees, he holds the residue in trust for the benefit of the owners of all the property covered by the policy, to be divided among them ratably. He has no right to deduct the full value of his property covered by the policy before making the apportionment. Parties who have advanced their share of the insurance premium are entitled to have the sums so advanced repaid them first, and are then to share ratably with the others in the residue of the insurance money.

Appeal from a decree of the Circuit Court of the county of Frederick, pronounced March 24, 1900, in the chancery suit of *McKee and Others* v. *Barrick and Others,* to which the appellant, E. Holmes Boyd, trustee, was admitted a party defendant on his petition.

*Reversed in part.*

The opinion states the case.

*Barton & Boyd,* for the appellants.

---

*Argued before Judge Phlegar qualified.
†Judge Buchanan was holding the bar examination.

Opinion.

*W. Roy Stephenson, R. E. Byrd,* and *Harry R. Kern,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

On the 3d of October, 1898, J. W. Barrick, who, as lessee of a grain elevator located at Clearbrook, in Frederick county, Va., was engaged in storing, shipping, buying and selling wheat, etc., took out a policy of insurance in the Georgia Home Insurance Company for $2,500 upon the following property:

"On stock of grain, grass seed, flour, mill-feed and offal, while contained in the frame slate-roofed elevator building, situated at Clearbrook, Va., on the C. V. railroad, about six miles north of Winchester, Va. It is understood and agreed that this policy covers property described, whether his own or held in trust, or on commission, or sold, but not removed—three-fourth clause attached."

On the 23d of May, 1899, the elevator was burned, and all the property in it destroyed.

McKee, Swimley, Whitzel, Clendenning, Johnson, Bromley, Cather, Rutherford and Bushong (appellees here) had stored wheat with Barrick, and at the date of the fire still had their wheat on storage with him, and each held a certificate in the following form:

"Received of .............. bushels, and ........ lbs. of wheat on deposit, for him, and at his risk, to be hereafter purchased by me at the expiration of .......... months or before, at his option.

........................."

In his proof of loss to the Georgia Home Ins. Co., Barrick made the following claim:

" Wheat belonging to Barrick..........$  946 85
Other property belonging to Barrick....  177 .45
Wheat held in trust by Barrick........ 2,565 59

Total loss ....................$3,689 89 "

But there was added to this (Barrick claims) the sum of $240 for corn lost by him, which was afterwards considered by the insurance company when a settlement with it was made.

Barrick effected a compromise with the insurance company on July 22, 1899, whereby he received $1,500 in full settlement of his policy of $2,500.

On June 20, 1899, McKee instituted his action in *assumpsit* against Barrick for the value of wheat claimed by him to have been sold to Barrick prior to its loss by fire. Clendenning, Swimley and Johnson on June 30th each filed a like action, and Cather on July 6th made a similar claim by notice, and on a later date Whitzel brought his action against Barrick for the value of his wheat.

July 26, 1899, McKee, Swimley, Cather, Clendenning and Johnson filed their bill in chancery in the Circuit Court of Frederick county, averring that they had delivered to Barrick at his elevator a certain quantity of wheat; that Barrick had insured the said wheat in the Georgia Home Insurance Company; that on May 23, 1899, the wheat was destroyed by fire; that on July 22, 1899, Barrick had presented a claim against the insurance company representing in his proof of loss that he held said wheat of said McKee and others as trustee for their benefit; that he received from the insurance company in trust for said depositors the sum of $1,500; that Barrick had acknowledged to the depositors that their wheat was insured; that he had refused to pay over to them a dollar of the money; that his reception of said trust fund, his refusal to account for or pay over the same to the depositors and a conversion of it to his

own use, showed his intention to hinder, delay and defraud said depositors from recovering from him the amount held in trust by him for them; that he intended to leave the State, and was insolvent; and praying an injunction to prevent him from disposing of the money collected by him, and that it be distributed among said depositors.

Barrick very promptly answered this bill, stating that there was no obligation on his part to insure wheat of depositors, but that he did take out a policy insuring both his property and property held by him in trust, and, setting forth the common law actions of depositors, asking that an election be required of them; admitting that after payment of his loss proved against the insurance company, except that on wheat ($413.45), $50 premium, and $50 counsel fee, the residue of the $1,500 received by him, on a compromise with the insurance company, should be distributed *pro rata* between himself and depositors of wheat in the elevator, alleging that Whitzel and Rutherford also had wheat in the elevator at the time of the fire and should share in the distribution; denying insolvency, his intention to leave the State, or that he intended to make an assignment of the insurance money, etc.

Whitzel filed in this suit his answer and cross-bill, setting forth substantially the statements of the original bill and alleging that Barrick had acknowledged to him that his (Whitzel's) wheat was insured, and both personally and through his attorney, notified him that his claim for wheat would be paid.

On August 17, 1899, Barrick made an assignment of the insurance money received from the insurance company then on deposit in a bank in Winchester, together with other funds, to E. Holmes Boyd, trustee, for the benefit of Barrick's wife, his father-in-law, his brothers-in-law, and a few other creditors for small amounts.

E. Holmes Boyd, trustee, filed his petition in this suit, setting forth the assignment and asking that the entire fund received

by Barrick from the Georgia Home Insurance Company be paid to him.

All depositors of wheat in the elevator when destroyed by fire having become parties to this suit by bill or petition, and the amount of wheat they severally had in the elevator when burned, and the value thereof, having been ascertained, the Circuit Court, upon the hearing of the cause, on the pleadings and the depositions and documentary evidence introduced, decreed as follows:

" That the motions to require the said parties to elect and dismiss their claims from this proceeding are denied, but upon the claim of J. W. Barrick in his answer that the complainants shall be required to accept a ratable portion of the fund in this case in exoneration of any personal liability against him in the common law actions, it is ordered that acceptance of the fund in this case estops the depositors from asserting any personal liability against Barrick in said common law actions inconsistent with their attitude in this case as depositors, and it being admitted that, under this ruling, the plaintiffs in their common law actions cannot maintain the same, so far as these common law actions are pending in this court they are dismissed, and so far as they are pending in other courts they are enjoined from prosecuting them."

After providing for payment to Barrick, out of the fund in the cause, of the cost of the insurance policy, the fees paid by him to counsel for securing the settlement with the insurance company, and of the costs of this suit, the decree distributes the residue of the fund ratably between Barrick and the depositors of wheat with him, deducting, however, from the shares of certain of the depositors, the sums advanced to them by Barrick; and further provides that all amounts decreed to belong to Barrick are to be paid to E. Holmes Boyd, trustee, to be by him

applied under the assignment made to him by Barrick on August 17, 1899, and that the claim of Bushong, amounting to $130.60, shall be paid out of the sum decreed to belong to Barrick; Bushong having paid Barrick for his insurance.

From this decree, Boyd, trustee, appealed to this court.

An insurance policy, such as Barrick held when the elevator operated by him was burned, is in common use with wharfingers, warehousemen, commission merchants and others having goods in their possession on deposit, storage or for sale on commission. Such a policy applies for the benefit of the persons who might own the property insured at the time of the loss, and the assured has the right to institute his suit to recover the value of the goods destroyed, and out of the recovery to pay himself to the extent of his interest, and the balance to pay over to the owner. *Morotock Ins. Co.* v. *Cheek*, 93 Va. 13; *Home Ins. Co.* v. *Balto. Warehouse Co.*, 93 U. S. 527, and authorities cited; Wood on Fire Ins., sec. 280, *et seq.;* May on Ins., sec. 424.

The latter author states the rule thus: "A person having goods in his possession as consignee, or on commission, may insure them in his own name, and in the event of loss recover the full amount of the insurance, and, after paying his own claims, hold the balance as trustee for the owners."

In *Home Ins. Co.* v. *Balto. Warehouse Co., supra,* Mr. Justice Strong laid down substantially the same rule as follows: " It is undoubtedly the law that wharfingers, warehousemen, and commission merchants having goods in their possession may insure them in their own name, and in case of loss may recover the full amount of insurance for the satisfaction of their own claims first, and hold the residue for the owners."

In *Morotock Ins. Co.* v. *Cheek, supra,* and in several of the cases cited in *Home Ins. Co.* v. *Balto. Warehouse Co., supra,* the only interest the warehousemen, etc., had in the property they insured was charges for storage, as carriers, or for money advanced, and the court held that, after paying these charges or

money advanced, the remainder of the insurance money should be paid to the owners of the property destroyed.

It is contended here that what is meant in the authorities cited by the terms " their own claims," or " their interest in the property," is not only charges for storage, as carriers or for money advanced, but where the assured has a policy on property held in trust along with his own property he must be paid for his entire loss, and then apply the remainder of the insurance, if any, to the payment of the loss of the owners of the trust property.

This was clearly not the intention of the assured and the insurer in this case, or in those cited. Barrick obtained the policy of insurance upon the representation that, in addition to any property he might have in the elevator should a loss occur, he carried property therein held in trust, or on commission, or sold and not removed. When he made claim of the insurance company for the loss sustained by the burning of the elevator, he based it upon a statement that he had in the elevator nearly three times as much wheat in trust for depositors as he himself had therein. He recognized after the fire that his depositors were interested in the insurance money, promising that they should be paid for their wheat out of the insurance money when he got it. Notwithstanding the "three-fourths clause" attached to the policy, if he dealt fairly with the insurance company and had in fact the amount of wheat in the elevator that he represented he had belonging to himself and his depositors, he was entitled to collect of the insurance company the face of the policy, and no satisfactory reason is given why he took $1,000 less than the face of the policy in settlement with the insurance company.

If the rule contended for by appellant could prevail, and Barrick be paid $946.85 for wheat, $240 for corn, and $177.45 for other property, he claims to have lost by the fire, his depositors of grain in the elevator would get nothing out of the in-

surance he received, although the policy was issued to him, in the main, doubtless, on the strength of property in the elevator held by him in trust, and a compromise of the claim he asserted against the insurance company effected on the ground that he held in trust nearly three times as much property destroyed by the fire as he claimed in his own right. Such a result would be manifestly unjust, and a rule of construction of the policy that would permit such a result would, as will be readily seen, open an avenue for the grossest frauds in such transactions.

In *Siter* v. *Morrs*, 13 Pa. St. 218, a similar policy of insurance was under consideration, and the opinion of the District Court, by Stroud, J., says: "Policies similar to the present, in which the insurance is expressly declared to be not merely of the property of the assured, in his own right, but of property held by him *in trust*, and on consignment or commission and the like, are of every day's occurrence. They are adapted to the varied wants of a large mercantile community, and the construction which gives to all the property fairly within the language used *equal protection* does but carry out the true meaning and actual purpose of the party in whose name the instrument was obtained. That it covers the whole value of all such property, as between him and the insurer, and not the mere interest of the former, has been decided in *De Forest* v. *Fulton Fire Ins. Co.*, 1 Hale 84, 118, 136. That such was the intention of the parties, it seems to me impossible to doubt. What other meaning could the parties have had? Why, having provided for their own property and property held on consignment, was that *held in trust* mentioned? What else does it mean in this connection but property the custody and possession of which were in themselves, but the actual ownership in others? The defendants' business sufficiently indicates this. They are stated to be forwarding agents. Their business would, therefore, frequently place the property of others in their warehouse. The two kinds of commission which they charged is a sufficient manifestation

that they anticipated such a reception. At a small expense, much more than repaid by their augmented business, induced by the confidence which an insurance would inspire, they produced their policy. Its terms place all the goods within the warehouse, from time to time, on the same level—all are equally protected."

The opinion of Stroud, J., was by the Supreme Court, upon a writ of error, adopted *in toto*, and the judgment of the lower court, in accordance with the views expressed in the opinion, affirmed.

The remaining question requiring our consideration is, did the court below err in decreeing that the claim of depositor, Calvin Bushong, for wheat destroyed in the elevator, amounting to $130.60, be paid out of the part of the insurance money decreed to belong to Barrick?

If Bushong is repaid the insurance he paid to Barrick, his claim stands upon no higher footing, we think, than the other depositors of wheat. The only difference between them is, the latter were liable to Barrick for their respective portions of the cost of insurance, while Bushong had paid Barrick his part of it. Bushong should be reimbursed the amount of insurance paid by him out of the $50 decreed to Barrick as the amount he paid for the insurance policy, and, this done, Bushong should share ratably with Barrick and the other wheat depositors in the net amount of the insurance fund distributed among them.

The decree appealed from, in so far as it provided that the share of Calvin Bushong of the fund distributed should be paid out of the part decreed to belong to Barrick, must be reversed and annulled, but in all other respects the decree will be affirmed, with costs to appellees as the parties substantially prevailing here, and the cause will be remanded to the Circuit Court for a redistribution of the fund under the control of that court, in accordance with the views herein expressed.

*Reversed in part.*