D. D. EDWARDS v. CLEVELAND MILL AND POWER COMPANY, A CORPORATION.

(Filed 18 May, 1927.)

**1. Bailment—Warehousemen—Act of God—Fires—Insurance—Damages.**

Where a milling company has received cotton for storage with each bale marked for identification, and thus mentioned in its warehouse receipt, and cotton in the warehouse, including that of the plaintiff, has been destroyed by fire resulting from lightning or other causes not within the control of the defendant, and the defendant has collected a part of the value of the plaintiff's cotton thus destroyed under a blanket policy of fire insurance: *Held,* a retention of the insurance money is a wrongful conversion of the plaintiff's property, and he may recover the amount thereof unaffected by the fact that the defendant had substituted the bales destroyed with cotton of the same grade, and that the price of cotton had declined from the market value at the time of the fire.

**2. Same—Actions—Cotton.**

One who stores cotton upon a consideration in the warehouse of another, which the warehouseman had insured, and the cotton has been destroyed by the act of God and not through any negligence on the part of the latter, the one who stored the cotton acquires rights under the policy of insurance against the warehouseman, and he may recover against the warehouseman the amount paid him by the insurance company.

**3. Same—Liability of Warehouseman as Insurer—Policies—Contracts.**

Where a cotton storage warehouse contract identifies the particular bales stored with it, and by its contract agrees to deliver them subject to storage charges: *Held,* by interpretation of the contract the warehouseman was obligated to return the identical cotton and not an equal number of bales

of the same quality, and where the cotton has been destroyed by the act of God, etc., or a cause beyond the warehouseman's control, the plaintiff in his action for conversion may recover the market value of his cotton, defendant having spun up the cotton, and the question of substitution by other cotton; that the cotton was fungible has no application.

**4. Same—Evidence—Questions for Jury.**

Where the evidence is conflicting as to whether the plaintiff in his action of conversion had agreed to accept cotton of the same quality, etc., as that destroyed when in storage in defendant's warehouse by fire set out by lightning, etc., instead of the identical bales agreed upon in the warehouse contract, an issue arises thereby for the jury to determine.

APPEAL by plaintiff from *Harwood, J.,* and a jury, at November Term, 1926, of CLEVELAND. New trial.

This is an action of plaintiff against defendant for the conversion of ten bales of cotton, weighing 5,730 pounds at 30 cents a pound. Defendant had certain warehouses, and on 2 January, 1923, plaintiff and defendant entered into a storage agreement to store 10 bales of cotton until 1 September, 1923, 25 cents per bale per month to be paid for storage. The storage receipt set forth the weight and number of each bale delivered to defendant. The cotton, when put in the warehouse, was marked so that it could be identified. Plaintiff, under this agreement, placed the cotton in defendant's warehouse, where was stored, along with plaintiff's cotton, some 94 bales of other cotton, making 104 bales in all. The warehouse was struck by lightning about 30 August, 1924, practically all of the bales of cotton were burned over and the tags burned off, so it was impossible to identify the plaintiff's cotton.

It was admitted by defendant that for its own benefit and protection plaintiff's cotton was insured, and after the fire the insurance company adjusted the damage with the defendant. The loss was adjusted by the allowance to defendant an average of 82 pounds a bale at 30 cents a pound, including plaintiff's cotton. Within two months after the fire, the defendant converted the balance of the unburned cotton of plaintiff to its own use by spinning it up. Defendant contends it then set apart for the plaintiff, in lieu of the cotton which had been burned, cotton of the same grade, quality and quantity, which cotton so set aside has remained in the warehouse of the defendant since said fire, and now remains there subject to the order and disposition of the plaintiff.

The burned cotton was wet, and it took about two months after the fire for defendant to spin it up. Plaintiff had other cotton stored which he removed about October, 1925, except the quantity of cotton which the defendant had provided to take the place of the ten bales which were burned. There was also due plaintiff in settlement on other cotton, difference between 23 bales as stored and 23 bales delivered, 339 pounds,

for which due bill was given plaintiff for 339 pounds good middling cotton, to be delivered to him instead of his original cotton.

Defendant had a blanket insurance policy, which covered all the cotton in the room where the fire was, including plaintiff's cotton. Defendant collected the insurance on plaintiff's cotton and converted to its own use the remainder of the ten bales that was not burned by spinning it up.

In substance, the defendant set up the plea that by agreement with the plaintiff certain cotton was substituted for the balance of the ten bales which were not burned—same kind, quantity and quality. This was denied by plaintiff. T. S. Morrison, a witness for defendant, who was in charge of the warehouse, testified in part: "I did substitute and he was satisfied." Defendant contends that at all times since the fire he has had and now has, subject to the demand of plaintiff, on hand cotton equal in amount, in grade and quality. There was a verdict and judgment for defendant that it was not indebted to plaintiff. The plaintiff made numerous exceptions and assignments of error, and appealed to the Supreme Court.

Other necessary facts will be set forth in the opinion.

*B. T. Falls for plaintiff.*
*Ryburn & Hoey for defendant.*

CLARKSON, J. The only necessary assignment of error for the determination of the case is to the charge of the court below, as follows: "If you shall find from the evidence that the plaintiff had stored in the warehouse of the defendant ten bales of cotton, and that during the period of such storage on or about 30 August, 1924, a fire occurred through no negligence of the defendant and without any fault of the defendant, and that the ten bales of cotton belonging to the plaintiff, along with ninety-four other bales of cotton stored in the warehouse, were burned over, the tags on the bales were burned off and any other and all other marks by which the bales of cotton could be identified as to the identical bales deposited by the plaintiff with the defendant for storage, so that there was no means of identification, or of a separation of the cotton as to the identical bales of cotton of the plaintiff from the other cotton in the warehouse, you are charged that the obligation resting on the defendant would be to deliver to the plaintiff, if you should find from the evidence that the defendant was unable to identify the bales of cotton delivered by the plaintiff—the defendant could discharge itself of the liability—by delivering to the plaintiff the same number of bales of cotton of similar grade and value, that is to say, that if the tags and markings of the bales of cotton were destroyed by means over which the

defendant had no control as by fire caused by lightning, and the tags and marks by which he could identify the cotton were removed without any fault of the defendant, the defendant would not be called upon to do an impossible thing, and if you should find from the evidence that the defendant could not identify the bales of cotton that belonged to the plaintiff, then the defendant could discharge its obligation and liability by having on hand and keeping on hand, and by tendering to or delivering to the plaintiff other bales of cotton in lieu of the bales that had been burned over, and if you shall find from the evidence that the defendant had on hand and kept on hand and had on hand at the time this suit was instituted, and still has on hand, ten bales of cotton of the kind and character and the grade and value of the ten bales of cotton deposited in storage by the plaintiff, you will answer the issue that I am submitting to you, 'Nothing.' The issue is as follows: 'In what amount, if anything, is the defendant indebted to the plaintiff?' " The jury answered "Nothing." This assignment of error must be sustained and a new trial granted.

It is admitted by plaintiff that he "did not allege that the cotton was burned by the negligence of the defendant or that the fire was caused by the defendant's negligence."

In 40 Cyc., p. 429, it is said: "A warehouseman is not liable as an insurer of the goods unless he makes himself so by the terms of his contract nor for loss of or injury to the goods due to an act of God or of the public enemy, nor for losses due to inherent defects in the goods or other causes not due to negligence on his part. He is required to exercise ordinary care in the custody of the goods, by which is meant that degree of care which ordinarily prudent warehousemen are accustomed to exercise in regard to similar goods under like circumstances." Again, in the same authority, on p. 431, it is stated: "In the absence of a special contract, a warehouseman is not liable for loss by fire which occurs without his fault or neglect." *Trouser Co. v. R. R.,* 139 N. C., 382; *Sawyer v. Wilkinson,* 166 N. C., 497; *Beck v. Wilkins,* 179 N. C., p. 231, Annotated in 9 A. L. R., p. 554; *Sams v. Cochran,* 188 N. C., 731; *Morgan v. Bank,* 190 N. C., 209.

It is admitted by defendant that for its own benefit and protection it insured all of the cotton in the warehouse, including plaintiff's cotton. It received the insurance on 82 pounds per bale for 10 bales of plaintiff's cotton at 30 cents a pound and used the remainder—spun it up within two months after the fire.

In *Bank v. Assurance Co.,* 188 N. C., at p. 753, citing many authorities, it is held: "Numerous decisions have established the principle, in this jurisdiction at least, that ordinarily the beneficiaries of an in-

demnity contract may maintain an action on said contract, though not named therein, when it appears by express stipulation, or by fair and reasonable intendment, that their rights and interests were in the contemplation of the parties and were being provided for at the time of the making of the contract."

In *Thayer v. Thayer,* 189 N. C., p. 508, 39 A. L. R., 434, it was said: "The suit is properly brought. We said in *Parlier v. Parlier,* 186 N. C., 503, 119, S. E., 898, 'We deduce from the authorities that it is well settled that, where a contract between two parties is made for the benefit of a third, the latter may sue thereon and recover, although not strictly a party or privy to the contract.' *Bank v. Assurance Co.,* 188 N. C., 753, 125 S. E., 631." *Schofield v. Bacon,* 191 N. C., at p. 255.

The principle applicable here is laid down in *Farmers Ginnery Mfg. Co. v. Thrasher* and others, 140 Ga., p. 669, 79 S. E., 474: "If the warehouseman insures goods for his customers, and collects money from the insurer for the loss of the goods, he will hold the fund so collected for the benefit of the insured customers, or those who may have succeeded to their rights, subject to legitimate charges. . . . If at the time of the fire there be on storage goods of customers, some of which are insured and others not, and some of them, though not destroyed, are damaged and rendered incapable of identification, and in such condition they are sold by the warehouseman, the fund thus derived from the sale of the salvage will be held by the warehouseman for the benefit of all the owners of the goods, whether they be included among the insured or uninsured class." See opinion by *Lumpkin, J.,* in same case, 144 Ga., p. 598; *Boyd v. McKee et al.,* 99 Va., p. 72; 37 S. E., p. 810; 27 R. C. L., p. 980, par. 37.

"Where a warehouseman does so insure the goods he acts as agent for the owners, and it is immaterial that the owners do not in fact know of the insurance until after the loss; a ratification or adoption of the contract of insurance by such owners is necessary, and may be made when they are informed of the insurance after the loss." *Broussard v. South Texas Rice Co.* (103 Texas, 535), 26 A. & E. Anno. Cases, at p. 145, citing numerous authorities. *Southern Cold Storage and Produce Co. v. Dechman & Co.* (Texas), 73 So. Western Reports, p. 545.

The cotton delivered by plaintiff to defendant the storage receipt set forth the weight of each bale and number. The storage contract showed the same property delivered for storage was to be redelivered to owner.

In the present case it is admitted that the defendant collected from the insurance company 30 cents a pound average 82 pounds a bale on 10 bales of plaintiff's cotton—820 pounds. Defendant is liable to plaintiff for the amount collected. The total 10 bales weighed 5,730 pounds;

from this must be deducted 820 pounds for which the insurance company paid defendant for the burned cotton of plaintiff. The balance 4,910 pounds, from defendant's testimony, was converted by it—spun up, within two months after the fire. Plaintiff is entitled to the fair and reasonable market price on the 4,910 pounds at the time it was used and converted by the defendant. 26 R. C. L., p. 1147, par. 61 and 63. Since the fire cotton has gone down in price. Defendant, in substance, sets up the plea that after the fire, by agreement with the plaintiff, the defendant was to substitute the same number of pounds of cotton not burned of the same kind and quality, and is now ready, able and willing to carry out this agreement. This is denied by plaintiff. This disputed fact must be determined by a jury. Such an agreement, if established, is valid. *Beck v. Wilkins,* 186 N. C., p. 210.

Cotton is not fungible goods in bales with numbers marked on each bale and the weight of each bale ascertained. The cotton in this case was not so treated by the storage contract, and a reasonable interpretation of the contract is that the same or identical cotton delivered was to be returned, and not an equal number of bales in kind. Usage and custom cannot take the place of a contract. *R. R. v. Fertilizer Co.,* 188 N. C., at p. 140. "By 'fungible' goods are meant goods any unit of which is, from its nature or by mercantile custom, treated as the equivalent of any other unit." 27 R. C. L., at p. 977, sec. 35. Although the identification of the ten bales of cotton may have been destroyed without any negligence on defendant's part, by the act of God—lightning—yet defendant admitted that it received pay from the insurance company for 820 pounds of plaintiff's cotton, at 30 cents a pound, therefore it is liable to plaintiff for the amount so received. The remainder was converted by defendant—spun up—within two months after the fire. It is, therefore, liable for the conversion of the remainder, the reasonable or fair market price at the time it was used by it, unless it can establish the alleged agreement with plaintiff to substitute cotton of equal amount, kind and quality. The 339 pounds of cotton defendant admitted it had, the difference between 23 other bales placed on storage and that delivered, the record shows that plaintiff during the trial withdrew the claim for pay for same, 339 pounds at 30 cents a pound—$101.70, the value of this cotton. No demand had been made by plaintiff for delivery of the cotton under the terms of the due bill.

For the reasons given, there must be a

New trial.