## INSURANCE CO. OF NORTH AMERICA v. UNITED STATES.

### No. 5516.

Circuit Court of Appeals, Fourth Circuit.

Jan. 27, 1947.

Stephen Nettles, of Greenville, S. C., for appellant.

Oscar H. Doyle, U. S. Atty., of Greenville, S. C. (Walter H. Hood, Asst. U. S. Atty., of Greenville, S. C., on the brief), for appellee.

Before PARKER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is an appeal in an action instituted by the United States, as the real party in interest, against the Insurance Company of North America, to recover on a policy of fire insurance issued by that company to the Carolina Warehouse Company, hereafter called Carolina. The policy covered 518 bales of cotton owned by the Commodity Credit Corporation, hereafter called Commodity, an agency of the United States which owned all of its stock. The cotton was stored with Carolina, and was destroyed by fire on August 19, 1942. The case was heard without a jury; and, from judgment in favor of the United States, the insurance company has appealed. The facts are fully and accurately stated in the opinion of the District Judge (see United States v. Insurance Company of North America, D.C., 65 F.Supp. 401) and need not be repeated here. They may be briefly summarized as follows:

Under a storage contract entered into by Carolina and Commodity in 1939, Carolina agreed to store certain cotton for Commodity and to keep it insured against loss or damage by fire. Pursuant to this provision Carolina had obtained a policy of fire insurance from the Insurance Company of North America, which by appropriate provisions covered the 518 bales of cotton belonging to Commodity, and which was valid and outstanding at the time the cotton was destroyed by fire on August 19, 1942.

Early in 1942 Commodity proposed to the various warehousemen with which it was doing business a new type of agreement under which its cotton would not be insured and sent to Carolina two copies of a proposed contract to be executed by it to become effective as of February 1, 1942. In the letter enclosing the copies of the proposed contract, Commodity advised Carolina that tag lists of cotton to be released from insurance coverage would be forwarded to Carolina upon receipt of signed copies of the contract from Carolina and that insurance coverage should not be cancelled until Carolina had received from Commodity a completed copy of the contract. For tax reasons, Carolina declined to execute the new contract at that time, but after the end of its fiscal year wrote Commodity that it was prepared to do so and enclosed contracts which it had signed to become effective as of February 1, 1942, a date then long since passed. Commodity refused to enter into contracts on this basis but proposed that it would enter into the new contract as of August 1, 1942, and sent two copies of a proposed contract to Carolina naming that as the effective date. These were executed by Carolina and mailed to Commodity on August 4th. They were received by Commodity's regional director and were signed by him on August 10th. On the same date he wrote Carolina that he had signed them and was enclosing Carolina's copy. The letter and signed copy of the contract were not received by Carolina, however, until August 27th; and the District Judge found that they were not mailed by Commodity until after the fire which occurred on August 19th.

Before the fire and after executing the new contract, Carolina's treasurer telephoned defendants' local agents and told them he had signed the contract and would release a certain amount of cotton from the coverage of the policy as soon as the contract had been signed by and received from Commodity. He did not, however, notify the agents to release any cotton from the coverage of the policy until after the fire. In the letter of Commodity which first proposed the execution of the new form of contract, Carolina had been notified, as pointed out above, that the insurance coverage should not be cancelled until a completed copy of the contract had been received. Tag lists of the cotton to be released from coverage were to be and were sent with the completed copy of the contract. These were necessary in order that Carolina might have an accurate record of the cotton held in storage for Commodity, which, by the terms of the new contract, was released from the requirement of insurance coverage.

Paragraph 6 of the new contract provided that Carolina should not be obligated to insure cotton owned by Commodity or cotton pooled by it and pledged as security for loans, and that, in the event of loss or damage by fire, Commodity would save Carolina harmless from liability under the insurance provision of cotton certificates

which Commodity had transferred without reporting the transfer to Carolina. Paragraph 11 of this agreement provided that with certain exceptions not here material, it should supersede any existing agreement between the parties and should prevail over the written or printed terms of warehouse receipts representing cotton of Commodity. After the fire, Commodity demanded payment under the policy for the loss of its cotton. Defendant, however, refused to pay, and on October 23rd attached "Special Cotton Endorsement No. 9-X" to the policy, the endorsement to be effective August 1st. This endorsement excluded coverage of the cotton in question pursuant to the provisions of the new contract.

■ Upon the facts as stated above, and as more fully set forth in the opinion of the District Judge, we think it clear that the new contract had not gone into effect at the time of the fire. The written instrument which Carolina signed and forwarded to Commodity on August 4th was not a completed contract, but an offer of a contract to Commodity. It became a completed contract only when it was signed and delivered by Commodity in accordance with the stipulation of the parties. Not only did Commodity, which was dealing with thousands of warehouses, reserve to itself the completion of the contract, but in its letter of January 7th it expressly notified Carolina that insurance on cotton should not be cancelled until completed copy of the contract had been returned to it along with a tag list of the bales of cotton which were to be released from coverage, thus showing clearly that the contract was not to be treated as completed until Carolina's copy had been returned together with the information which was to be used in releasing insurance coverage. It is elementary that the making of a contract is not concluded so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not regard an arrangement as completed which the parties thereto regard as incomplete. 12 Am.Jur. 519; Williston on Contracts (1920 Ed.) vol. 1, sec. 28; Hardwood Package Co. v. Courtney Company, 4 Cir., 253 F. 929; Ambler v. Whipple, 20 Wall. 546, 22 L.Ed. 403.

■ Since we are of opinion that the making of the new contract had not been concluded at the time of the fire, we need not consider what would have been the rights of Commodity if it had been concluded. In this connection, however, it should be remembered that no attempt to cancel the insurance coverage was made until after the fire and that the policy unquestionably covered the cotton which was burned. It should be remembered, also that the insurance on the cotton was to be kept in force until Carolina should receive the return of its copy of the contract and that this was not received until after the fire. It seems clear, therefore, that, even if what had been done resulted in the concluding of the new contract prior to the fire, the policy was in force and protected the interest of Commodity when the fire occurred. It is well settled that "the cancellation of an insurance policy does not affect rights which have already accrued under the policy in favor of the insured or of a third person * * *" (29 Am.Jur. 261); and since the policy covered the entire interest in the cotton, not merely that of the warehouseman, the owner was entitled to the insurance. Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 543, 23 L.Ed. 868; Edwards v. Cleveland Mill & Power Co., 193 N.C. 780, 138 S.E. 131, 133, 53 A.L.R. 1404; Boyd v. McKee, 99 Va. 72, 37 S.E. 810; note Ann.Cas.1913A at p. 146. The effect of the new contract was to relieve Carolina of the obligation to carry insurance, not to cancel the insurance, to reinsure the risk or to preclude Commodity's claiming the proceeds of insurance to which it was entitled.

■ Question has been raised as to whether Commodity is not bound by the cancellation of the insurance as of August 1st to which Carolina assented, in view of the fact that the new contract which became effective as of August 1st relieved Carolina of the obligation to carry insurance. This is answered by what has just been said, viz. that the effect of the new contract was to relieve Carolina of the obligation of carrying insurance, not to cancel the insurance that was being carried. Commodity was not a party to the cancellation and did nothing to waive its right to insur-

702

ance which was being carried, pursuant to the understanding between the parties, pending the receipt by Carolina of its copy of the contract.

■■ We have considered the motion that Commodity be made a party to the action; but in the light of the authorities we do not consider this necessary. It seems well settled that, when the United States acts through the agency of a wholly owned corporation, it may sue in its own name for the protection of its interests, without the joinder of the corporation. United States v. Czarnikow-Rionda Co., 2 Cir., 40 F.2d 214; Russell Wheel & Foundry Co. v. United States, 6 Cir., 31 F.2d 826; United States v. Skinner & Eddy Corporation, D. C., 5 F.2d 708; cf. Erickson v. United States, 264 U.S. 246, 44 S.Ct. 310, 68 L.Ed. 661; Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328.

The judgment appealed from will be affirmed.

Affirmed.