LUCILLE F. MUSGRAVE AND GALE M. LANNING, ADMINISTRATRIX OF CLYDE WILSON MUSGRAVE v. MUTUAL SAVINGS AND LOAN ASSOCIATION

No. 7022SC272

(Filed 24 June 1970)

1. **Rules of Civil Procedure § 50—  motion for judgment notwithstanding the verdict**

    The availability of a motion for judgment notwithstanding the verdict under G.S. 1A-1, Rule 50(b), constitutes an innovation in the civil procedure of this State, since a motion for nonsuit made under the provisions of former G.S. 1-183 could not be allowed after verdict for insufficiency of the evidence.

MUSGRAVE *v.* SAVINGS & LOAN ASSOC.

**2. Rules of Civil Procedure § 50— granting of motion for judgment notwithstanding the verdict**

The granting of a motion for judgment notwithstanding the verdict constitutes an adjudication on the merits of the case.

**3. Rules of Civil Procedure § 50— appeal from judgment notwithstanding verdict — failure of parties to preserve right to new trial**

On appeal from entry of judgment for defendant notwithstanding verdict for plaintiff, a new trial cannot be granted where defendant did not move in the alternative for a new trial pursuant to Rule 50(c)(1), and plaintiffs did not move for a new trial under Rule 50(c)(2); if the appellate court finds that the trial court properly directed judgment for defendant notwithstanding the jury verdict, the judgment of the trial court will stand, but if the appellate court finds such judgment was improperly directed, the jury's verdict will be reinstated and judgment entered thereon.

**4. Rules of Civil Procedure § 50— motion for judgment notwithstanding verdict — sufficiency and consideration of evidence**

In determining the sufficiency of the evidence to withstand a motion by defendant for judgment notwithstanding the verdict, the same principles apply that prevailed under the former procedure with respect to the sufficiency of evidence to withstand a motion for nonsuit under G.S. 1-183, that is, all evidence which supports plaintiffs' claim must be taken as true and considered in the light most favorable to plaintiffs, giving them the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in plaintiffs' favor.

**5. Insurance § 11— sufficiency of evidence of undertaking to procure life insurance**

Plaintiff's evidence was sufficient to support a jury finding that defendant savings and loan association, through its agent, undertook to procure a policy of insurance on the life of its debtor, now deceased, to cover the unpaid balance of a loan, where it tended to show that all of the papers signed in connection with the loan transaction were white except for one which was colored, that all forms used by defendant in connection with its loans were white, that the insurance application forms were blue, that deceased debtor was asked his date of birth while defendant's agent filled in the various forms, that only the insurance application required that the date of birth be given, that after the death of the debtor defendant's agent went immediately to defendant's office to determine whether the insurance papers had been returned, that defendant customarily made insurance available to its customers, and that deceased debtor had obtained insurance through defendant's agent on six previous occasions to cover loans continuously owed over a period of 25 years.

**6. Customs and Usages— admissibility in evidence**

While usage and custom cannot take the place of a contract, a person's custom or practice of doing a certain thing in a certain way is admissible as evidence that he did the same thing in the same way on a particular occasion in issue.

7. **Insurance § 2— broker as agent of insured**

An insurance agent acts as agent of the insured in negotiating for a policy and owes a duty to his principal to exercise reasonable skill, care and diligence in effecting the insurance.

8. **Insurance §§ 2, 11— liability of agent for failure to procure policy**

If an insurance broker or agent is unable to procure insurance which he has undertaken to provide, it is his duty to give timely notice to the proposed insured, who may then take the necessary steps to secure the insurance elsewhere or otherwise protect himself; a broker who fails to give such notice renders himself liable for the resulting damage which his client suffered from lack of insurance.

9. **Insurance § 11— failure to give notice that policy had not been obtained — negligence — sufficiency of evidence**

Plaintiffs' evidence was sufficient to be submitted to the jury on the issue of the negligence of defendant savings and loan association in failing to give its debtor, now deceased, notice that a policy of life insurance which defendant's agent had undertaken to procure for him had not in fact been obtained.

APPEAL by plaintiffs from *Seay, J.,* January 1970 Civil Session, DAVIDSON County Superior Court.

The plaintiff Lucille F. Musgrave (Mrs. Musgrave) is the widow of Clyde Wilson Musgrave (Mr. Musgrave) who died 7 July 1966. The plaintiff Gale M. Lanning is the Administratrix of the decedent's estate.

On 27 December 1966, plaintiffs instituted this action and in their amended complaint, filed 12 July 1968 with leave of the court, they allege as follows: Plaintiff Mrs. Musgrave and her husband obtained a $5,000 loan from defendant on 5 May 1966 and executed as security therefor a note and deed of trust on certain realty. As part of the transaction, defendant, acting through its agents, agreed to procure a policy of insurance on the life of Mr. Musgrave, which, upon the death of Mr. Musgrave, would pay the unpaid balance of the note securing the loan. Defendant negligently failed to procure the insurance policy, and negligently failed to notify Mr. and Mrs. Musgrave that the insurance had not been obtained. As a result of the failure to secure the policy of insurance defendant is indebted to plaintiffs in the amount of $4,913.79, which is the amount owed on the loan at the time of Mr. Musgrave's death.

As a second cause of action, plaintiffs allege in the amended complaint that by failing to procure the policy of insurance as hereinabove set out, defendant breached his contract with Mr. and Mrs. Musgrave.

The first trial of the case ended in a mistrial. See *Musgrave v. Savings and Loan Assoc.*, 5 N.C. App. 439, 168 S.E. 2d 497.

Upon retrial of the case, plaintiffs offered evidence tending to show as follows: Mr. and Mrs. Musgrave were married in 1934. He died on 7 July 1966 as a result of a fire at his place of employment. During the period of their marriage, Mr. and Mrs. Musgrave obtained a number of loans from defendant. The first loan was on 4 December 1941 when they moved into a new home. Subsequent loans were obtained on 21 January 1946; 18 April 1952; 5 March 1954; 16 April 1955; and 28 September 1955. When each of these loans was obtained, Mr. and Mrs. Musgrave dealt with Agnes C. Everhart, secretary of defendant. Mrs. Everhart was authorized to act for defendant in accepting applications for life insurance policies. Mr. Musgrave obtained a policy of life insurance in an amount sufficient to cover the unpaid balance of each of the loans obtained prior to 5 May 1966. The procedure followed by Mrs. Everhart when obtaining insurance applications was to fill in the application at the time the loan was closed, writing in the answers provided by the borrower. The borrower would then sign the application form. The questions dealt with health and age, and included the birth date of the borrower. No copy of the application was made, and after it was filled out, it was placed in an envelope and then put in the mail basket of defendant. No record was made of the application, and no covering letter was sent with it. No follow-up procedure was used to see what action was taken on the application. If a policy was issued by the life insurance company in response to the application, the policy was sent to defendant, who, through its agents, delivered it to the borrower. If no policy was issued and the borrower didn't contact Mrs. Everhart about the insurance, nothing more was done about it.

When Mr. and Mrs. Musgrave went to defendant's office on 5 May 1966 to obtain a loan they dealt with Mrs. Everhart, as they had on all past occasions. While seated at Mrs. Everhart's desk they signed various papers at her direction. All of the papers which were signed were white except one which Mrs. Musgrave recalled was some color other than white. All of the forms used by defendant in connection with its loans and which were required to be signed by the borrowers were white. The forms provided by Security Life and Trust Company for making applications for life insurance policies were blue. Mrs. Musgrave further recalled that Mrs. Everhart asked Mr. Musgrave his age and his birth date. None of the loan papers required the borrower to give his birth date. Only the life insurance application required this information.

After the loan was closed Mr. and Mrs. Musgrave received no word by mail relating to any insurance policy until 5 July 1966 when Mr. Musgrave was in the hospital in critical condition. On that date Mr. Musgrave received a letter from Security Life and Trust Company cancelling the life insurance policy which he had carried on a loan obtained in 1955, the balance of which had been paid with a portion of the proceeds from the 5 May 1966 loan. When Mr. Musgrave died two days later, Mrs. Musgrave went to defendant's office and showed the letter to Mrs. Everhart, saying, "Miss Agnes, is it true?" Mrs. Everhart replied, "I'm afraid it is, Lucille. Just as quick as I heard about the accident I came up here to see if his insurance papers had come back yet." Mrs. Everhart made further statements that she had looked to see if a policy had come back, or if any papers or application or anything had been returned by the life insurance company. On cross-examination Mrs. Everhart denied that she had taken an application for life insurance on Mr. Musgrave's life in connection with the loan on 5 May 1966. No policy of insurance was in force at the time of Mr. Musgrave's death.

At the close of plaintiffs' evidence, and again at the close of all the evidence, defendant made a motion for a directed verdict pursuant to G.S. 1A-1, Rule 50(a). The court expressly reserved ruling on both motions and submitted to the jury three issues which were answered in plaintiffs' favor as follows:

"1. Did Clyde Wilson Musgrave make application to Agnes C. Everhart, agent for Mutual Savings & Loan Association, for procurement of a policy of life insurance by signing an application form?

ANSWER:   Yes

2. Was Agnes C. Everhart negligent as alleged in the complaint?

ANSWER:   Yes

3. What amount of damages, if any, are plaintiffs entitled to recover as a result of the negligence of the defendant?

ANSWER:   $4,913.79"

Defendant, in apt time, moved to set the verdict aside and to have judgment entered in its favor notwithstanding the verdict pursuant to G.S. 1A-1, Rule 50(b). The court allowed this motion and ordered, adjudged and decreed:

"1. That the plaintiffs' evidence is not legally sufficient to entitle plaintiffs to recover judgment as against the defendant on

plaintiffs' alleged First Cause of Action of the amended complaint.

2. That the plaintiffs' evidence is not legally sufficient to entitle plaintiffs to recover judgment as against the defendant on plaintiffs' alleged Second Cause of Action of the amended complaint.

3. That plaintiff has [sic] not proved any claim upon which any relief can be granted."

Plaintiffs excepted to this judgment and appealed.

*Walser, Brinkley, Walser & McGirt by Walter Brinkley for plaintiff appellants.*

*J. Lee Wilson and Ned A. Beeker for defendant appellee.*

GRAHAM, J.

Plaintiffs only assignment of error is to the entry of judgment for defendant notwithstanding the jury verdict for plaintiffs. The judgment was entered 12 January 1970 and undoubtedly represents one of the early instances where the provisions of Rule 50 of the Rules of Civil Procedure (G.S. 1A-1, effective 1 January 1970) were applied. The provisions of Rule 50 pertinent to the appeal are as follows:

"(b)    *Motion for judgment notwithstanding the verdict.* —

    (1)    Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the submission of the action to the jury shall be deemed to be subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. In either case the motion shall be granted if it appears that the motion for directed verdict could properly have been granted. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the judge may

allow the judgment to stand or may set aside the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. . . .

* * *

(c) *Motion for judgment notwithstanding the verdict — conditional rulings on grant of motion. —*

(1) If the motion for judgment notwithstanding the verdict, provided for in section (b) of this rule, is granted, the court shall also rule on the motion for new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate division has otherwise ordered. In case the motion for new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate division.

(2) The party whose verdict has been set aside on motion for judgment notwithstanding the verdict may serve a motion for a new trial pursuant to Rule 59 not later than 10 days after entry of the judgment notwithstanding the verdict."

(See also Rule 41 for the procedure to be followed when the trial is by the court without a jury).

[1-3]  The availability of a motion for a judgment notwithstanding the verdict constitutes an innovation in the civil procedure of this State. Formerly, a motion for nonsuit made under the provisions of former G.S. 1-183 could not be allowed after verdict for insufficiency of the evidence. *Jones v. Insurance Co.*, 210 N.C. 559, 187 S.E. 769. The granting of a motion for judgment notwithstanding the verdict constitutes an adjudication on the merits of a case. Here, defendant did not move in the alternative for a new trial pursuant to Rule 50(c)(1). Neither have plaintiffs, under the provisions of Rule 50(c)(2), moved for a new trial. Consequently, the issue before this court is: Did the trial court properly direct judg-

ment for defendant notwithstanding the jury verdict on the grounds set out in its judgment; namely, that the evidence was legally insufficient to permit plaintiffs to recover under any claim asserted? If we answer in the affirmative, the judgment of the trial court will stand. If we answer in the negative, the judgment will be reversed and it will be ordered that the verdict be reinstated and that judgment be entered thereon. In either event, there can be no right to a new trial, for, as previously pointed out, neither party has preserved such a right by proper motion.

[4] In determining the sufficiency of the evidence, we are guided by the same principles that prevailed under our former procedure with respect to the sufficiency of evidence to withstand a motion for nonsuit under G.S. 1-183. See *Dumas v. MacLean*, 404 F. 2d 1062 (1st Cir. 1968). All evidence which supports plaintiffs' claim must be taken as true and considered in the light most favorable to plaintiffs, giving them the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in plaintiffs' favor. *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47, and cases therein cited.

[5, 6] With these principles in mind we first examine the evidence with respect to whether it is sufficient to support a jury finding under the first issue that defendant, through its agent Mrs. Everhart, actually undertook to obtain a policy of insurance on the life of Mr. Musgrave by taking his application for it. While there is no direct evidence on this issue, there is evidence from which reasonable inferences may be drawn that an application for insurance was obtained from Mr. Musgrave as alleged by plaintiffs. Mrs. Musgrave was present when the loan was closed. She testified that all of the papers signed at that time were white except for one which was colored. Mr. Musgrave was asked his date of birth while Mrs. Everhart filled in the various forms. The uncontradicted evidence is that all forms used by defendant in connection with its loans were white. The insurance application forms were blue. Only the insurance application required that a date of birth be given. Mrs. Everhart stated that after the death of Mr. Musgrave she went immediately to defendant's office to determine whether the insurance papers had been returned. Defendant customarily made insurance available to its customers, and Mr. Musgrave had obtained insurance through defendant's agent, Mrs. Everhart, on six previous occasions to cover loans continuously owed over a period of twenty-five years. It is true that usage and custom cannot take the place of a contract.

*Edwards v. Power Co.,* 193 N.C. 780, 138 S.E. 131; 25 C.J.S., Customs & Usages, § 20. However, a person's custom or practice of doing a certain thing in a certain way is admissible as evidence that he did the same thing in the same way on a particular occasion in issue. Stansbury, N.C. Evidence 2d, § 95.

It may well be that none of the above factors, if considered separately, would be sufficient to take the case to the jury on the question of defendant's undertaking to procure insurance for Mr. Musgrave. When considered together, however, it is our opinion that they are sufficient to support the jury's finding on this issue.

[9]　The remaining question is whether there was sufficient evidence of negligence on the part of defendant to support the jury's finding as to the second issue. Defendant has presented no argument on this question, having relied completely upon its contention that the evidence was insufficient to permit a finding for plaintiffs on the first issue.

[7, 8]　The general rule is that an insurance agent acts as agent of the insured in negotiating for a policy, and that he owes a duty to his principal to exercise reasonable skill, care and diligence in effecting the insurance. *Elam v. Realty Co.,* 182 N.C. 599, 109 S.E. 632; 43 Am. Jur. 2d, Insurance, § 174, p. 230; Annot., 29 A.L.R. 2d 171 (1953). Although there is some authority to the effect that one who gratuitously undertakes to procure insurance for another is not liable for his omission to do so, the general rule is that the undertaking in itself imposes a duty. 43 Am. Jur. 2d, Insurance, § 174, p. 231. "[T]he better considered decisions on the subject are to the effect that while the agent or broker in question was not obligated to assume the duty of procuring the policy, when he did so, the law imposed upon him the duty of performance in the exercise of ordinary care, . . ." *Elam v. Realty Co., supra,* at p. 602. "If a broker or agent is unable to procure the insurance he has undertaken to provide, he impliedly undertakes — and it is his duty — to give timely notice to his customer, the proposed insured, who may then take the necessary steps to secure the insurance elsewhere or otherwise protect himself. [Citations omitted]. When, under these circumstances, the broker fails to give such notice, he renders himself liable for the resulting damage which his client suffered from lack of insurance. 44 C.J.S., Insurance, § 172 (1945)." *Wiles v. Millinax,* 267 N.C. 392, 148 S.E. 2d 229.

[9]　No insurance was procured for Mr. Musgrave by defendant and he was not given timely notice of this fact. The question of defendant's negligence was therefore properly for the jury.

The judgment entered for defendant notwithstanding the verdict is therefore reversed and it is ordered that the jury verdict be reinstated and that judgment be entered thereon.

Reversed and remanded.

MALLARD, C.J., and MORRIS, J., concur.