Merrimack,  
June, 1895.

HUNT, *Receiver*, v. NEW HAMPSHIRE FIRE UNDERWRITERS' ASSOCIATION.

When a risk is reinsured for a company which becomes insolvent, the reinsurers will be bound, in the event·of a loss, to pay the entire amount against which they indemnified, and not such proportion thereof as the insolvent company may ultimately pay to its creditors.

In such case, the amount paid will not be a part of the assets for distribution among the creditors of the insolvent company, but is for the sole benefit of the insured, and may lawfully be paid to him by the reinsurers.

ASSUMPSIT. Facts agreed. April 1, 1893, the Granite State Fire Insurance Company insured for one year property of the Boston & Maine Railroad for $25,000. August 10, 1893, the property was destroyed by fire to the extent in value of $2,300, which sum the Granite State paid in October following.

April 1, 1893, the People's Fire Insurance Company reinsured the Granite State company for one third part of the risk, and on the same day the defendants reinsured the People's company for one half their risk. The defendants' contract contained

the following clause : " Loss, if any, to be settled and paid *pro rata* with the reinsured, and at the same time and place, and upon the same terms and conditions."

In October, 1893, the plaintiff, Hunt, was appointed by the court receiver of the People's company, and is now acting as such under the direction of the court. The. People's company is in process of liquidation and settlement of its affairs by the receiver, and it is not now known whether the assets are sufficient to satisfy the liabilities. The plaintiff claims that the defendants are bound to pay to him one sixth of the total loss, without waiting for the settlement of the affairs of the People's company and without regard to the dividend that may be ultimately paid to creditors of that company. The defendants claim that they are liable to pay to the plaintiff one half only of the sum which the People's company may ultimately pay. Upon notice given them of the action, the Granite State company appeared and claimed to be entitled to whatever sum the defendants are bound to pay.

*David Cross*, for the plaintiff.

*Leach & Stevens*, for the defendants.

*Calvin Page*, for the Granite State Fire Insurance Co.

CARPENTER, J. The question presented by the parties is whether the defendants are bound to pay to the People's company the entire amount of the loss against which they agreed to indemnify the People's, or only such a part thereof as the insolvent People's may ultimately pay. The defendants received a full consideration for the risk against which they insured, and there is no reason why they should not be required to pay the full amount of the loss. *Blackstone* v. *Insurance Co.*, 56 N. Y. 104, 106. The premium received by them and the sum to be paid by them in case of loss were intended to be, and in theory of law are, precisely equivalent. *King* v. *Insurance Co.*, 7 Cush. 1. Their position is in legal effect the same as it would be if the People's, for the purpose of paying the loss, had deposited with them the full amount of it in money.

But the further question whether the money due on the contract equitably belongs and should be paid to the People's or to the Granite State company arises on the face of the case. For convenience of consideration a simpler parallel case may be taken.

The People's insure A's house for $10,000, and immediately reinsure for the same amount with the defendants. The house is burned; and shortly after the People's become insolvent, and,

as may be supposed, unable to pay any part of their indebtedness. The defendants, willing to perform their just obligations, file a bill of interpleader against A and the People's, and pay the $10,000 into court. To which party, A who has lost that amount, or the People's who have lost nothing, does the money in equity belong? The particular terms of the policy issued by the defendants are not material. It must be assumed that by it the defendants merely stipulate to indemnify the People's, to the extent of the sum named, against loss by reason of the destruction of A's house by fire, because they have no power to make any contract of insurance except contracts of indemnity.

In *Bank* v. *Herrick*, 62 N. H. 174, Jarib Herrick as principal and John W. Herrick as surety were indebted to the plaintiffs upon a promissory note. January 27, 1877, Jarib gave John W. a mortgage of real estate conditioned to indemnify him against loss by reason of his having signed the note. In 1878, Jarib obtained his discharge in bankruptcy. His assignee sold the land, subject to the mortgage, to the defendant, S. In 1879, John W. died insolvent. No part of the note being paid, the plaintiffs brought their bill in equity against Jarib, the administrator of John W., and S, praying that the mortgage be assigned to them, and prevailed.

The condition of the mortgage was not that Jarib should pay the note, but that he should save his surety harmless. The surety paid and could pay nothing. The condition according to its literal terms was not and apparently never could be broken. The court said that equity disregards mere form, and held that the transaction was in substance an appropriation of the mortgaged property for the payment of the debt in case it was not otherwise satisfied by the mortgagor. The purchaser at the assignee's sale took the property with notice. In equity it belonged to the plaintiffs for the purpose of satisfying their debt, and to the extent necessary for that purpose. Their right did not depend upon privity of contract. In fact, there was none. It did not appear that the plaintiffs had any knowledge of the mortgage until they filed their bill. It was immaterial that the relation of principal and surety existed between the mortgagee and mortgagor,— the result would have been the same had they been joint principals, or if the mortgage had been given by the surety to the principal. It was equally immaterial that the mortgagee was bound to pay the debt, except that his liability was essential to the particular form of the security given. The result would have been the same if Jarib had given a deed of the same property to a stranger on condition that the grantee indemnify and save him harmless from his liability on the note. In short, the decision rested wholly upon the broad ground that in equity and good conscience the mortgaged property should be

applied to the satisfaction of the plaintiffs' debt. The facts in all material respects and the judgment of the court in *Holt* v. *Bank*, 62 N. H. 551, and *Barton* v. *Croydon*, 63 N. H. 417, were the same as in *Bank* v. *Herrick*.

These cases establish the propositions that a creditor, for the satisfaction of his debt, may in equity avail himself of any subsisting provision made by his insolvent debtor for its payment; and that an appropriation or pledge of property by the debtor for the purpose of indemnifying against the debt any person liable upon it, is equitably equivalent to a provision for its payment.

The principle of the first proposition is often applied in actions at law. *Burr* v. *Beers*, 24 N. Y. 178; *Reed* v. *Paul*, 131 Mass. 129; *Butterfield* v. *Hartshorn*, 7 N. H. 345; *Berry* v. *Gillis*, 17 N. H. 9; *Hodgdon* v. *Merrill*, 26 N. H. 16, 18.

If A, for a good consideration, agrees with B to indemnify him against his indebtedness to C, A, as between him and B, becomes the principal debtor. The debt is in equity his debt and not B's. Having received a full consideration for his undertaking, he is morally and equitably as much bound to pay the debt to C, as he would be if B had delivered to him and he had accepted the amount of the debt in gold coin in trust for its payment. If for technical reasons the law is powerless to enforce the duty, equity is subject to no such weakness. *Philbrick* v. *Shaw*, 61 N. H. 356. It will not permit him to retain the money, the consideration of his agreement, and escape its performance on the flimsy pretext that until B is compelled to pay the debt, or a part of it, he has fulfilled the letter of his obligation. He may be compelled at law to pay the debt if B is solvent, and in equity, at least, he is not relieved from the duty by the accident of B's insolvency. Whether the agreement may be revoked at any time before C is informed of and assents to it, need not be considered. It is enough for present purposes that it cannot be annulled after C intervenes and asserts against B his claim for its performance.

An insurance contract is a contract of indemnity. "It does not differ from a bond of indemnity or a guaranty of a debt, since the obligor or guarantor takes upon himself certain risks to which the obligee or creditor would otherwise be exposed. The only difference is in names and form of the instrument, the consideration for an insurance being always called a premium, and the instrument containing the terms of the contract, a policy." 1 Phil. Ins. (2d ed.), s. 2. By a contract of reinsurance, in whatever language expressed, the obligation of the reinsurer is to indemnify the insurer against his liability for the loss by fire of the property insured. They stand in a relation to each other much like that of principal and surety. The only material

difference is that the reinsurer is not in law directly liable to the insured. As between the two, he is the principal obligor.

In the case supposed (as in the actual case), as long as the People's are solvent there is no difficulty or question. A recovers of them the full amount of his loss, and they recover the same sum of the defendants. The contracts of both companies are performed. There is no occasion for this circuity. The sole duty of the defendants under their contract is to hold the People's harmless. They have the right to pay directly to A the amount of his loss; by so doing they fully perform their contract. The obligation of the People's to A is discharged. But whichever method is adopted, A is indemnified, and the People's, assuming that the same premium is paid for the insurance and for the reinsurance, neither gain nor lose by the transaction.

The plaintiff claims that by the mere accident of the insolvency of the People's and inability to pay more than ten per cent of their liabilities, the defendants' contract is materially modified. They are no longer at liberty to perform it by paying directly to A the amount of his loss. It is not now enough that in compliance with the literal terms of the contract they protect the People's from loss. They must, it is said, pay the full amount of the loss to the People's; and A, in common with their other creditors, is entitled to ten per cent only of the sum justly due to him. In other words, the People's, for the sole reason that they can pay ten per cent only of their indebtedness, are, it is claimed, justly entitled to realize out of A's loss of $10,000, which by their contract they are bound to pay, a net profit of $9,000. They are to profit by their losses. It is for their interest — for the interest of every one of their creditors — that all the property insured by them, and by them reinsured in a solvent company, be destroyed by fire. Such a result equity will not tolerate. It is not good law or good morals that one should profit by the destruction of his neighbor's property (1 Sto. Eq. Jur., *s.* 493), especially if he has himself agreed to make the loss good. "A contract to tempt a man to transgress the law . . . is void by the common law." *Collins* v. *Blantern*, 2 Wils. 347, 350.

The People's, under their contract with the defendants, are entitled to protection against loss by reason of the destruction of the insured property, and to nothing more. They cannot object to a judgment or decree which has that effect. The defendants cannot object to a judgment that they pay the money to the insured, because it is to them immaterial whether they pay it to him or to the insurer.

Upon filing a proper bill in equity by the Granite State, there will be a decree in their favor; or they may, upon reimbursing the plaintiff for all expenses hitherto incurred by him in the prosecution of this action, take judgment therein for their use.

*Herckenrath* v. *Insurance Co.*, 3 Barb. Ch. 63, and the later cases which have followed it have been considered, and their doctrine is not approved.

*Case discharged.*

All concurred.