## NORTHERN TRUST CO. v. SNYDER.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

### No. 314.

**1. COVENANTS IN LEASE—WHEN BINDING ON ASSIGNEE.**

Covenants that the lessee will keep the buildings insured for two-thirds of their value, and, in case of destruction by fire, will, use the proceeds of such insurance for rebuilding, or will pay over the insurance to the lessor at his option, run with the land, and bind the assignee of the lease and all acquiring rights under him.

**2. SAME—INSURANCE MONEY—APPLICATION.**

Lessees covenanted to construct buildings and keep them insured for two-thirds of their value, the proceeds of insurance to be used in rebuilding, or to be paid over to the lessor, at the lessee's option. A trust deed executed by the lessor required a similar amount of insurance, and such deed also contemplated that the fund arising from the insurance be applied to rebuilding. *Held,* that it was proper to award the sum so derived to the lessor, as against the trustee.

**3. SAME—EQUITABLE LIEN FOR RENT—SATISFACTION FROM INSURANCE.**

The fact that the contract of lease gives an equitable lien for rent on machinery remaining in the legal possession of the lessees does not render the latter trustees of the machinery for the lessor, so that the insurance effected thereon by the lessees will inure to the benefit of the lessor.

On Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Suit by the Northern Trust Company, trustee, against the Columbia Straw-Paper Company, to foreclose a trust deed. Annie E. Snyder, administratrix of Henry Snyder, deceased, intervened, for the purpose of demanding insurance money in the hands of complainant. From a decree in her favor, complainant appeals.

On the 2d day of September, 1872, Henry Snyder, the appellee's intestate, executed and delivered to George W. Hastings, James E. Stewart, and Frederick Holford a lease of certain premises in Clark county, in the state of Ohio, with right to maintain a dam, for the term of 15 years, commencing January 1, 1873, and ending December 31, 1888, at an annual rental of $2,500. The lessees agreed to erect upon certain foundation walls upon the premises, to be completed by the lessor, permanent brick buildings, the taxes upon the premises to be divided equitably between the parties, according to the several values of the parts upon which they were severally to pay the taxes; that is to say, if the land and water power and buildings and other improvements put upon the premises by the lessor should be assessed separately, the lessor should pay all taxes assessed against the land and water power, and the lessees all taxes assessed against the buildings and other improvements put by them upon the premises. The lease further provided that at the expiration of its term the lessees might remove all the fixtures and appurtenances, including water wheel put in by them, which could be removed without injury to the buildings put upon the premises; but the buildings, upon the expiration of the term, should become the property of the lessor. The lease also provided that the lessor should have a lien upon all machinery, fixtures, and tools put into the buildings, for all rent past due, and for all damages sustained by reason of any breach of the covenants of the lease. The lease further provided that the lessors "will keep said buildings insured for two-thirds of their value, the proceeds of said insurance, in case of fire, to be used in rebuilding, or paid over to the lessor, at the option of said lessee." The lessee entered into and continued in possession of the premises until the last day of March, 1887, at which time the lessor leased the premises to

George W. Hastings and Frank J. Webb, co-partners under the name of the Hastings Paper Company, for a term of three years from January 1, 1888, upon the terms and conditions of the original lease, except as to the amount of rental to be paid, and subject in all respects to the terms and conditions of the original lease. The lease was duly recorded, so that constructive notice of its contents was given to any one dealing with the lessees with respect to the premises. The Hastings Paper Company entered into possession, and continued therein, complying with the terms and conditions of the lease, until March 10, 1890, at which time the firm was organized into a corporation under the same name, and continued in possession for a further term of four years from January 1, 1891, under a new lease, which was subject to all the terms and conditions of the original lease of September 2, 1872, and the supplemental lease of March 1, 1888, except as to the amount of rental. This third lease was likewise duly recorded in the official records of the county. Under the original lease, the lessees erected and constructed upon the premises a certain building, and placed therein certain machinery for the manufacture of paper. On the 23d of March, 1893, the Hastings Paper Company assigned its interest in the lease to the Columbia Straw-Paper Company, which latter company entered into possession of the premises subject to all the terms and conditions of the leases, and paid rental to the intervener, as administratrix of the estate of the original lessor for the year 1893.

On the 31st day of December, 1892, the Columbia Straw-Paper Company executed a trust deed to the appellant and another to secure a certain issue of bonds, which trust deed covered the premises in question, with other premises, and contains the following clause: "Also any and all leases and agreements, of any kind, and all right, title, and interest therein or thereto, which said Columbia Straw-Paper Company now has or hereafter may acquire or enter into, covering or relating to above-described land and the water power used thereon or in connection therewith, reference being had particularly to a certain lease and agreement running from Henry Snyder to the Hastings Paper Company, dated March 10, 1890, for the term of four years from the 1st day of January, 1891, and duly recorded in the records of said Clark county, Ohio." The trust deed also provided that during the life of the trust deed the Columbia Straw-Paper Company should keep all buildings, fixed plant, machinery, and other property of an insurable nature, forming part of the mortgaged property, insured against loss or damage by fire in an amount equal to two-thirds of the full value thereof, and in such name or names, and in such office or offices, as shall be approved by the trustee, and should duly pay all premiums and other sums of money payable for that purpose, and deliver to the trustee a receipt for the same, and should apply all moneys to be received by virtue of any such policy in making good any loss or damage which may have been occasioned to the property so insured. Another article of the trust deed provided that, if any money should be received by the trustee under any insurance policy upon the buildings, fixed plant, machinery, and other assets included in the mortgaged property, the same "may be applied to the reconstruction, replacement, or repair of the said buildings, fixed plant, machinery, and other property; provided, however, that such money shall be deposited with the Illinois trustee or its successor in the trust, or as it shall direct, as a further security hereunder, until the same shall be so applied; provided, nevertheless, that nothing in this article contained shall compel the trustees, or either of them, to see personally to the application of any moneys under this clause, or render them responsible to any nonapplication or misapplication thereof, but that the trustee shall be at liberty to allow the same to be applied upon the request and under the direction of the company, its successors or assigns." On the 17th of April, 1893, the buildings and machinery were destroyed by fire, there being at the time insurance on the buildings and machinery upon said leasehold premises in the name of the Columbia Straw-Paper Company, and, by special indorsement on each policy, the loss, if any, was made payable to the Northern Trust Company, one of the trustees in the trust deed. The total insurance upon the buildings was $10,207; upon machinery, $17,593.05; upon engines, $1,553.25; upon stock, $146.69. The loss was subsequently adjusted and settled, and the insurance money derived therefrom, exclusive of the expense

of adjustment, was paid to the appellant, trustee, to whom the policies had been made payable, as follows: Insurance on buildings, $5,263.55; insurance on machinery, $11,088.51;. insurance on boiler and engine, $707.08. The lease expired by limitation on the 31st day of December, 1894, and the Columbia Straw-Paper Company did not rebuild or reconstruct the building or replace the machinery held therein.

In a suit brought by the trustees under the trust deed to foreclose it, the appellee intervened, and demanded that this insurance money so in the hands of the appellant should be paid over to her, upon the grounds—First, that as the lease, in express terms, provided that the building should be returned to the lessor, and should be insured for the purpose of rebuilding, the petitioner was entitled to the insurance on the buildings, and also to such sum out of the insurance on the fixtures as would reimburse her for the loss and damage sustained by failure to rebuild; and, secondly, that the lien given by the lease upon the fixtures for unpaid rent and damage to the leasehold is, in equity, transferred to the proceeds of the insurance on the fixtures, and entitles the appellee to payment of such rent and damages out of the fund in the hands of the appellant. There was due for unpaid rent the sum of $1,600, with interest. There was also claimed to be due, by reason of the failure of the Columbia Straw-Paper Company to rebuild, the amount of the insurance thereon; and damages were also claimed to be due by reason of alleged depreciation and deterioration in value from failure to rebuild in the sum of $5,000. The court below found that the cost of rebuilding would amount to over $10,000; that the unpaid rental amounted to $1,600; and that the injury to the leasehold was $5,000, from failure of the Columbia Straw-Paper Company to perform the conditions of the lease. The court further found that the petitioner was equitably entitled to the whole of the proceeds derived from the insurance on the building, and was also entitled, out of the proceeds of the insurance upon the machinery, to the further sum of $6,600, on account of unpaid rent and damages to the leasehold, and entered decree accordingly, which is here for review. The record and briefs of counsel disclose somewhat obscurely that the difference between the amount of money realized upon the insurance upon the buildings and the amount for which the buildings were insured was due to the failure of certain insurance companies effecting insurance upon the property.

Chas. A. Dupee, for appellant.

John A. Henry and Otto Gresham, for appellee.

Before WOODS and JENKINS, Circuit Judges, and GROSSCUP, District Judge.

JENKINS, Circuit Judge, after this statement of the case, delivered the opinion of the court.

The lease contained covenants that the lessees would keep the buildings insured for two-thirds of their value, and, in case of destruction by fire, would apply the proceeds of the insurance in rebuilding, or would pay over the amount of such insurance to the lessor, at their option. The rights of the Columbia Straw Paper Company and of the appellant were acquired with notice of and subject to these terms. This covenant was one running with the land, and bound the assignee of the lease and all who acquired rights under him. Thomas v. Von Kapff, 6 Gill & J. 372; Vernon v. Smith, 5 Barn. & Ald. 1; Spencer's Case, 5 Coke, 17; Masury v. Southworth, 9 Ohio St. 340.

The lessees covenanted that they would keep the buildings insured for an amount equal to two-thirds of their value. They did insure the buildings to the amount of $10,207, which amount, as against that company, in the absence of evidence, must be taken to

represent two-thirds of the full value. Particularly so in this case, since, by the trust deed, that company likewise agreed to insure the buildings for two-thirds of their value; and this insurance, being effected in compliance with their covenant, must be deemed to represent the amount of two-thirds of that value. The trustee was not only constructively advised of this covenant in the lease, but the leases were particularly referred to in the trust deed, and were the bases of the title of its mortgagor. By the expressed terms of the lease, the proceeds of such insurance were to be used in rebuilding, or were to be paid over to the lessor, and this at the option of the lessee. It is clear, therefore, that it was in the contemplation both of the straw-paper company and its trustees that this insurance (although taken out in the name of the straw-paper company, and the loss thereunder, if any, made payable to the trustee) was a fund to be applied in performance of the covenant of the lease, and was to be used in rebuilding, or paid over to the lessor. The trustees knew that the covenant in the lease required insurance to the amount of two-thirds of the value of the building. Their trust deed likewise required a similar amount of insurance. It may not be presumed that the trustees contemplated the insurance of the buildings to an amount in excess of their actual value. The stipulations of the trust deed contemplated, also, that the fund arising from such insurance was to be applied to rebuilding. Under such circumstances, the court below was clearly right in awarding to the appellee the amount derived from insurance upon the building.

The claim to the insurance upon the machinery and engine rests upon a different foundation. It is asserted that, as the lease gave an equitable lien upon the fixtures for unpaid rent and damages to the leasehold, in equity that lien is transferred to the proceeds of insurance upon the fixtures, and entitles the appellee to the fund in the hands of the appellant. This contention cannot be upheld. The tenant owed to the lessor no obligation to effect insurance upon these fixtures. Indeed, the doctrine by which the appellee becomes entitled to the insurance upon the buildings is to the effect that the bare covenant to insure is merely personal, and does not bind the assignee of the term, and, in general, gives the landlord no right to receive the insurance money from the receiver; and that the right obtains and the covenant runs with the land only when the lease provides for reinstating the premises with the insurance money. We are not aware that it has ever been held that a mortgagee of property, in the absence of proper covenant, is entitled to the insurance money upon the mortgaged premises taken out by the mortgagor in his own name. As has been generally held, the contract of insurance is a personal contract of indemnity between the insured and the underwriter. The mortgagor has an insurable interest in the mortgaged property, and may insure it for his own benefit. The mortgagee does not, therefore, acquire any right to claim the benefit of the insurance. Such equitable right in a mortgagee only arises when his contract with the mortgagor provides for insurance as further security. The right of the mort-

gagee, as the right of the lessor, rests, in this respect, wholly upon contract. Jones, Liens, § 79; Jones, Mortg. (4th Ed.) § 401, and authorities cited; May, Ins. (3d Ed.) § 6; Insurance Co. v. Lawrence, 10 Pet. 507; Carpenter v. Insurance Co., 16 Pet. 495, 501; Carter v. Rockett, 8 Paige, 437. The contract of insurance does not attach itself to the thing insured, nor go with it when it is transferred. The City of Norwich, 118 U. S. 468, 494, 6 Sup. Ct. 1150.

The court below sustained the claim of the appellee to this insurance upon the ground that, as the contract of lease gave an equitable lien upon the machinery which remained in the legal possession of the lessees, that the lessees and their successors thereby became trustees of the machinery, and, under the familiar doctrine that the trustee cannot deal with a trust estate in his own interest as against that of the cestui que trust, held that the insurance effected upon the trust property inured to the benefit of the lessor. This ground cannot, we think, be sustained. The lessees were in no proper sense trustees of this property. The machinery was theirs. They had simply contracted to give to the lessor an equitable lien thereon for such rent as should not be paid, and for damages by reason of any breach of the covenants of the lease. They were no more trustees than is a mortgagor a trustee for the mortgagee.

The decision below was thought to be sanctioned by the decision in Parry v. Ashley, 3 Sim. 97. There a testator had created a general charge by way of annuity in favor of the plaintiff upon all of his general and personal property, subject to which it was given to the defendant, who was also made executrix of the will. The court held that whether, as executrix, she was bound to renew the insurance effected by the testator, she did, in fact, renew it, and that the court must hold prima facie that she renewed it in the character in which she was entitled to renew it, namely, as executrix, and therefore renewed it in behalf of all who were interested in the trust estate. We need not consider whether the doctrine of that case can be upheld. We think it affords no sanction for the decision under review.

The decree will be reversed, and the cause remanded, with directions to the court below to enter a decree in favor of the appellee for the amount realized upon the insurance upon the buildings, with interest from the date of the decree reversed, and in other respects that it be dismissed upon the merits.