## AMERICAN CENTRAL INS. CO. v. CRESPI & CO.
### No. 9764.

Court of Civil Appeals of Texas. Austin.
Feb. 9, 1949.

Rehearing Denied Feb. 23, 1949.

Fulbright, Crooker, Freeman & Bates, by Newton Gresham, all of Houston, for appellant.

C. M. Smithdeal, of Dallas, and W. H. Nunn, of Georgetown, for appellee.

HUGHES, Justice.

This suit was brought by Crespi & Company, appellee, against the American Central Insurance Company, appellant, and Joe L. Gaida, to recover the value of 38 bales of cotton destroyed by fire on May 13, 1947.

Gaida's liability, which was established by judgment for the full amount of the loss, was predicated upon his responsibility as a warehouseman. Gaida has not appealed.

The liability of appellant was established below and is sought to be sustained here upon the ground that it was an insurer of the 38 bales of cotton; the judgment against it being proportionate to the total amount of insurance carried by Gaida.

Trial before a jury resulted in an instructed verdict for appellee.

Gaida was a public warehouseman in Granger, Texas. He carried several policies of fire insurance including one with appellant which provided that it covered "property owned by the insured; or held by the insured in trust or on commission or on consignment or on joint account with others; or sold but not delivered; or for which the insured may be liable."

Appellant states that the ultimate question involved in this appeal is whether the 38 bales of cotton were covered by its insurance at the time of the fire, contending that before the fire occurred appellee made a "binding determination, election and agreement not to take the benefit of Gaida's insurance."

The 38 bales of cotton had been stored with Gaida by farmers who had produced it. Against all of this cotton Gaida had issued negotiable warehouse receipts, 31 of which were marked "insured" and 7 were not so marked.

On May 8, 1947, one Pulcrabek, who was appellee's agent, acquired the warehouse receipts on the 38 bales and mailed them to Gaida, with instructions to rush shipment of the cotton to appellee in Galveston by rail. Accompanying these receipts and instructions were drafts drawn on appellee, payable to Gaida and covering his storage and yardage charges and insurance charges on the cotton which was under insured warehouse receipts. Yardage charges included delivery of the cotton from the warehouse to the railroad company. No charges were paid beyond May 8.

These receipts, shipping orders and drafts were received by Gaida not later than the morning of Saturday, May 10, when Gaida cashed the drafts and marked the receipts "cancelled."

The railroad platform on which the cotton would have been placed for shipment was only 100 feet from Gaida's warehouse, but the cotton had not been moved from the warehouse before the fire, on the morning of May 13.

Appellant offered, but was not allowed to prove, that there was an understanding or agreement between Gaida, the warehouseman, and Pulcrabek, the agent for appellee, that such agent did not desire any cotton belonging to appellee to be under the protection of any insurance carried by Gaida, this agreement to be effective "once the cotton had been purchased by Crespi and Company and the warehouse receipts mailed to or turned over to Gaida."

Proof of the existence of a custom that when stored cotton was sold and warehouse receipts surrendered, the purchasers carried their own insurance, was also rejected by the trial court.

It is upon this agreement and custom which appellant relies to support its position that appellee elected not to take the benefit of Gaida's insurance.

It is not contended by appellant that the policy of insurance issued by it to Gaida was not in force at the time of the loss nor that such policy did not by its terms cover the 38 bales of cotton belonging to appellee.

Giving full force to the agreement and custom we are of the opinion that appellee did not lose the right to claim the benefit of Gaida's insurance with appellant.

The agreement and custom must be reasonably viewed and construed in the light of the duties of a warehouseman under the law, it being presumed that the parties act-

271

ed with knowledge of and dependence upon performance of such legal duties.

Art. 5607, Vernon's Ann.Civ.Stats. provides that: "Upon the presentation and return to the warehouse of any warehouse receipt issued by its manager, and properly endorsed, and the tender of all proper warehouse charges upon the property presented by it, such property shall be delivered immediately to the holder of such receipt; * * *."

■ "Immediately" means "without lapse of time, instantly, at once, without intervention of anything as a medium." Woodward v. Murphy, Tex.Civ.App., Austin, 29 S.W.2d 828, writ ref.

Gaida did not comply with these statutes. He retained the cotton from the morning of May 10, when the warehouse receipts, drafts and shipping instructions were received, until the loss occurred on the 13 of May.

The only other insurance which appellee was shown to have contained this provision: "Warranted by the assured free from any liability for cotton in the possession of any carrier or other bailee who may be liable for any loss or damage thereto; and free from any liability for cotton shipped under a bill of lading containing a stipulation that the carrier may have the benefit of any insurance thereon; and that any insurance granted hereunder shall be null and void to the extent of any insurance which the assured or any carrier or other bailee has, at the time of the disaster, and which would attach if this policy had not been issued."

It is clear that this insurance offered appellee no protection against the loss of the 38 bales of cotton under the facts before us.

We believe the only reasonable construction to put on the agreement and custom is that they contemplated compliance with the law by Gaida, i. e. immediate delivery of the cotton upon surrender of the warehouse receipts and payment of all charges.

Support of this construction is found in the fact that Gaida did not cancel the insurance on the 38 bales of cotton when the warehouse receipts were surrendered. That this insurance was for the benefit of Gaida as well as appellee is shown by the judgment of the court below which provides that the judgment against Gaida shall be credited with the amount of the judgment against appellant when it is paid.

■ Appellant had issued and had been paid for a policy of insurance which covered appellee's cotton. This insurance was valid since Gaida, as a bailee, had the right to insure property in his custody for the benefit of himself and bailor. 44 C.J.S., Insurance, § 183, page 880. The agreement between Gaida and appellee's agent was wholly collateral to the insurance contract and appellant was not a party to such collateral agreement. Whatever rights appellant may have under such agreement could be no greater than their source.

■ In our opinion, neither the custom nor the agreement had the effect, under the facts of this case, of abrogating the insurance policy sued upon, and the court did not err in excluding the proffered evidence.

■ We are further of the opinion that the facts do not support an election by appellee not to claim protection of Gaida's insurance with appellant for the reason that appellee had no choice of procedure when its cause of action arose.

■ In order for there to be an election a party must have available more than one course which he may pursue, "for a party having but one way to obtain relief cannot be said to have elected." 15 Tex.Jur., p. 827; Poe v. Continental Oil & Cotton Co., Tex.Com.App., 231 S.W. 717.

The only claim which appellee had for insurance was against appellant. This claim it promptly prosecuted.

■ In Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377, 393, the court said: "The right of election is given to the beneficiary, he being permitted to choose the remedy which is more advantageous to him. The doctrine of election of remedies is not a favorite of equity. It has been said that it 'is a harsh, and now largely obsolete rule, the scope of which should not be extended.' "

272

It would not only be most inequitable to deny appellee recovery under the facts of this case but, in our opinion, would be contrary to well settled principles of law.

The judgment of the trial court is affirmed.

Affirmed.