La Salle Extension University, Inc., a Corporation, Plaintiff-Appellant, v. B. F. Shaw Printing Company, a Corporation, Defendant-Appellee.

Gen. No. 49,734.

First District, Second Division.

September 14, 1965.

Warren L. Swanson, of Chicago, for appellant.

Winston, Strawn, Smith & Patterson, of Chicago (Douglas C. Moir and James L. Perkins, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This appeal comes from a judgment for the defendant entered on a jury verdict October 15, 1963, in the Superior Court of Cook County, Illinois. Along with the general verdict returned by the jury was a special interrogatory: "Did the parties to this suit have an

agreement to the effect that the defendant would not be responsible for the loss of the property in question?" The jury answered, "Yes."

The LaSalle Extension University filed a complaint in the Superior Court consisting of two counts. The first count alleged that the appellant had delivered to the appellee, B. F. Shaw Printing Company, certain forms from which the company was to print lessons to be used in the appellant's correspondence school business. This count further alleged that the appellee had not returned them and stated that the value of the materials delivered to the appellee was $80,000.

The second count alleged that Shaw had procured various insurance policies which not only covered property owned by it but also property which it "held in trust or on commission." LaSalle claimed it was entitled to share in the proceeds of these insurance policies to the extent of the damage it suffered.

The pertinent points in the answer filed by B. F. Shaw were that there was an agreement between the parties that Shaw would not take out insurance to cover the articles in its custody and that LaSalle had agreed to take out insurance on its property, and that it was not negligent in its care of the appellant's property. With regard to the insurance, it was claimed that the amount recovered on the claims was not enough to reimburse Shaw for the losses it sustained. It was also claimed that at no time did the appellee submit claims or proof of loss to its various insurance carriers for damage or destruction of property not owned by it.

The plaintiff-appellant, LaSalle Extension University, is a correspondence school which teaches a wide range of courses from high school subjects to law. The lessons used in the various courses are printed. The University apparently had the lessons typeset by

another company and sent the completed page form to Shaw for printing. Shaw did not do all the University's printing work, but seemingly handled a major part of it. The University also supplied the printer with the paper to be used in preparing the lessons.

On February 16, 1958, there was a fire at the printing plant which virtually destroyed the premises and everything in it. The cause of the fire has never been explained. The University's theory as to the first count of its complaint is that a bailee who fails to return property to a bailor is presumably guilty of having lost the property through his own negligence, and that the printing company did not present evidence to rebut the presumption of its negligence.

The printing company does not take issue with the first part of the appellant's theory—that is that a bailee of property is presumably guilty of negligence if he finds himself unable to return it—but claims that it offered an explanation from which the jury was properly able to determine that the loss was not occasioned through its negligence.

In support of its proposition that the defendant was negligent, the University points to these facts in the record:

1. inflammable paper and ink were stored inside the plant;
2. because of the plant's location at the end of the water main there was little pressure in the pipes, thus making it difficult for the firemen to combat the blaze;
3. there was no sprinkler system in the plant;
4. the heating plant was in operation at the time of the fire, the temperature being below zero;
5. no watchman nor any person was in the plant at the time;

6. no watchman was ever on duty in the plant on Sundays, the day this fire occurred;
7. since there was no watchman on duty, there was no one to hear a fire alarm or detect the fire;
8. the fire was discovered too late to put out; and
9. if a watchman had been in the plant the fire could have been extinguished without the destruction which resulted.

■■ The appellee points out that the University has the burden of showing that the jury's verdict was against the manifest weight of the evidence. It points to evidence that the ink stored in the plant was inflammable only when exposed to high temperatures and could not be accidently ignited by a spark or something of that order, as the appellant suggested. A fire inspector testified that he had been in the plant to inspect it before the fire and that it was clean and free of debris. The watchman testified that when he left the plant hours before the fire it was in a clean and orderly condition. Since there was no one in the plant Sunday it presumably was in a clean condition when the fire broke out. It is claimed that the company was not necessarily negligent because it located its plant at the end of a water line, nor was there necessarily lack of due care in that there was no sprinkler system in the plant, although this was a factor that could be considered by the jury in determining the company's care. There certainly was no negligence in operating a heating plant when it was cold outside. Finally, though the fire occurred during the few hours a week when no one was in the plant, there was nothing that would require the jury to find due care necessitated a watchman on the premises twenty-four hours a day, seven days a week. In short, the jury could reasonably have found that Shaw was not negligent

in the operation of its plant, and such a finding, therefore, is not against the manifest weight of the evidence.

The appellant next claims that the alleged agreement that Shaw would not be "responsible" for the property in its custody was not a defense to this action. There was testimony from Julius Johnson in the form of a deposition that he was the University's purchasing agent at the time the University negotiated with Shaw to do some of its printing work. He testified that the parties agreed that the University would be responsible for fire damage or loss with regard to its property. Robert Shaw, treasurer of Shaw Printing, testified to the same negotiations and stated that it was agreed that the University would take responsibility for the property. Since representatives of both corporations testified that it was agreed that the printing company would not be responsible for damage to the University's forms, the jury did not act improperly in finding that such an agreement existed.

■ ■ The University claims that such an agreement is improper because it could relieve the printing company of the consequences of its own negligence, but the jury returned a general verdict for the defendant and we must, therefore, assume that it found Shaw free from negligence. Lashmett v. Country Mut. Ins. Co., 29 Ill App2d 281, 172 NE2d 394 (1961). The problem raised by the University is not before us and we will not attempt to answer it here.

Count II of the appellant's complaint dealt with the disposition of the insurance proceeds received by the printing company as a result of the fire. The Court below granted summary judgment as to this count and from that ruling the University appeals. The case which most resembles the one at bar as to the facts is London Assur. v. Bigeleisen, 39 A2d 494, 135 NJ

Eq 564 (1944). In that case, the insurance company filed a complaint in the nature of a bill of interpleader. That complaint alleged that the company had issued insurance to the Bigeleisens and that there was a fire on the business premises belonging to the insureds. It was also alleged that the insureds had in their possession property of others which was being held in trust or on commission. The company wanted to know to whom to pay the insurance.

The court dismissed the complaint on the basis that the Bigeleisens were exclusively entitled to the proceeds from the policy, and that none of the other defendants had any claim, legal or equitable, to the insurance proceeds. The court based its ruling on the fact that there appeared nothing to show that the insurance contract was entered into for the benefit of the insureds' customers, and that they, therefore, had no interest in the proceeds.

█ So in this case; the University was not a party to the insurance contract and it paid no premiums. This is not a case where it was agreed by the parties that the bailee would take out insurance to protect the bailor's interest in the property. The evidence indicated the contrary. Neither party to this action has directed us to an Illinois decision which would be controlling on the issue before us. We are persuaded by the reasoning of the London Assurance case and hold that from the facts shown we see nothing which would permit the plaintiff to recover the proceeds of insurance purchased by the defendant.

█ The University claims that no proof has been offered that Johnson had authority to bind his employer and point out that the authority of an employee cannot be established through his statements. There was, however, more than adequate evidence showing that the University knew Johnson was negotiating with Shaw to have printing work done and that these

397

negotiations were entered into with the approval of the University.

The University took out insurance to cover its property in the custody of Shaw. There was evidence from James L. Perkins, an attorney for Shaw called as an adverse witness under § 60 of the Civil Practice Act, to show that Shaw's losses exceeded the proceeds of the Shaw policies. The Court below acted properly in granting summary judgment to the defendant on Count II of the plaintiff's complaint. In re Donovan's Estate, 409 Ill 195, 98 NE2d 757 (1951). The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.