**CUMIS INSURANCE SOCIETY, INC.,**
Appellant,

v.

**REPUBLIC NATIONAL BANK OF
DALLAS, Appellee.**

No. 17824.

Court of Civil Appeals of Texas,
Dallas.

May 4, 1972.

Rehearing Denied May 25, 1972.

——◆——

J. Dan Bohannan, Burford, Ryburn & Ford, Dallas, for appellant.

Gordon H. Rowe, Jr., Gardere, Porter & DeHay, Dallas, for appellee.

GUITTARD, Justice.

Republic National Bank of Dallas has sued Cumis Insurance Society, Inc., on two contracts styled "Credit Union Discovery Bonds" issued by the society, one to Grand Rapids Teachers Credit Union of Grand Rapids, Michigan, and the other to Merced School Employees Federal Credit Union of Merced, California. The bank alleges that it delivered to the credit unions certain blank traveler's checks, which were stolen while being held by the credit unions for safekeeping and sale, and that some of the stolen checks were completed by persons unknown and were negotiated so that the bank was required to pay out $2,180 for checks stolen in Grand Rapids and $6,310 for checks stolen in Merced, and that these losses were covered by the contracts in question. Both parties moved for summary judgment. The facts alleged in the petition were established without dispute. The record shows that the checks were taken in burglaries of the offices of the credit unions and that the total amount paid out by the bank on the stolen checks

was $8,170. The trial court denied the society's motion and granted the bank's motion for summary judgment and the society appeals.

The question is whether the bank has the right to recover for this loss as third-party beneficiary. This question depends on two subsidiary questions: (1) Does a contract to indemnify an insured bailee for loss of property within its premises "held by the Insured in any capacity, and whether or not the Insured is liable therefor" insure the full value of the property or only the bailee's interest? (2) If the contract insures the full value of the property, does the owner have the right to enforce it as a third-party beneficiary? We hold that the full value is covered and that the owner may enforce the contract.

The first question, concerning the property insured, is a matter of determining the intent of the parties from the language of the contract. Since the two contracts here are identical, we shall discuss them as if only one were involved. In the opening paragraph the society "agrees to indemnify" the insured credit union "from and against any losses sustained by the Insured as a result of any of the occurrences or events stipulated in this Bond." Among the "occurrences or events stipulated" are the following:

"For direct loss of any property, as defined herein, through burglary, robbery, larceny (whether common-law or statutory), theft, holdup, misplacement, mysterious unexplainable disappearance, damage or destruction, including damage or destruction by fire of property as defined herein, while such property is within the premises as defined herein."

"Property" is defined as "Money, securities, bullion, * * * jewelry * * * in which the Insured has a pecuniary interest or which are held by the Insured in any capacity, and whether or not the Insured is liable therefor." "Securities" is defined to include "checks."

Under the contractual definition these checks were "property." They were covered by the contract in the same manner as money, bullion or jewelry. Although they may have been of little inherent value, they were potentially worth the face amounts if sold or negotiated. Consequently, we must consider that a loss occurred at the time of the burglary, like the loss of any other property taken from the credit unions' custody, rather than at the time the bank was required to pay them.[1]

Moreover, the checks were "property" in the sense that they were the subject of a contract of bailment between the credit union and the bank.[2] Hence, we have stated the first question above to be whether the society has agreed to insure only the bailee's interest, or whether it agreed to insure the full value of the property.

We interpret the contract as insuring the full value of the property because we find that intent in the insuring clause when taken in connection with the definition of "property." The insuring clause covers "loss of any property" through burglary, fire and other occurrences specified while "within the premises" of the insured. The definition of "property" is broad enough to cover property held by the insured as bailee, since it is not limited to property "in which the Insured has a pecuniary interest," but extends to property "held by the Insured in any capacity." Since property held by the insured as bailee (or in any other capacity) is covered "whether or not the Insured is liable therefor," the in-

sured's legal liability for the loss need not be established.

■ The society contends that the phrase "whether or not the Insured is liable therefor" means only that the society could not avoid liability to the insured for any amount the insured has actually paid out on the ground that the insured has paid something it was not legally liable for.[3] In this connection the society concedes that the credit union could recover from the society if it had first paid the bank for this loss. We do not think the contract can reasonably be construed as making coverage depend on the voluntary act of the insured after the loss. We construe it as providing indemnity to the insured for loss of any property on its premises by burglary, fire, or any of the other occurrences specified, to the extent of the credit union's insurable interest as owner, bailee, or otherwise. Consequently, we hold that the insured credit union had the right to recover from the society the full value of the property as indemnity for such loss and hold the proceeds in lieu of the property for the benefit of the owner.

■ This interpretation of the contract is amply supported by judicial precedents. If the language of the contract limits the insurance to the interest of the bailee in property within his custody, or his liability for loss of such property, the courts hold that the insurer is liable only to the extent of the bailee's interest or of the amount of the bailee's liability legally established.[4]

1. Peoples Sav. Bank v. American Sur. Co., 15 F.Supp. 911 (W.D.Mich.1936); Concordia Lutheran Evangelical Church v. United States Cas. Co., 115 A.2d 307 (D.C.App.1955).

2. *Mellon Nat'l Bank v. Citizens Bank & Trust Co.*, 88 F.2d 128 (8 Cir. 1937, cert. den. 302 U.S. 702, 58 S.Ct. 21, 82 L.Ed. 542). Under the present contract the same principles would apply if the credit union is considered a trustee or agent.

3. This argument is supported by the opinion in Allen v. Massachusetts Bonding &

Ins. Co., 218 Iowa 294, 253 N.W. 498 (1934), followed in Fidelity & Deposit Co. of Maryland v. Reed, 108 S.W.2d 939 (Tex.Civ.App., San Antonio 1937, no writ).

4. Orient Ins. Co. v. Skellet Co., 28 F.2d 968 (8 Cir. 1928); Allen v. Royal Ins. Co., 49 S.W. 931 (Tex.Civ.App., Austin 1899, writ ref'd); Insurance Company of North America v. Ferrell, 234 Ark. 581, 353 S.W.2d 353 (1962); Crown Fabrics Corp. v. Northern Assur. Co., 124 N.J.L. 27, 10 A.2d 750 (1940); Washburn-Crosby Co. v. Home Ins. Co., 199 Mass. 463, 85 N.E. 592 (1908).

On the other hand, a bailee has an insurable interest in the property, which authorizes him to insure it for its full value, and courts have construed contracts containing language similar to that now before us as providing this broader coverage.[5]

 The society contends that its liability is limited to loss of the credit union's interest and the funds the credit union has actually paid because the society agreed only to "indemnify the Insured * * * against losses sustained by the Insured." The society argues that this language provides personal indemnity insurance rather than insurance on property.[6] We cannot agree. Insurance on property, as well as other insurance, is by definition indemnity against loss.[7] Otherwise it would be against public policy.[8] Insurance on property is not an incident of the thing insured, but a personal contract of indemnity to the person insured for his loss.[9]

 The distinction between property insurance and personal insurance must rest on contractual language other than the verbs "indemnify" or "insure," which in this context are synonymous.[10] A contract provides property insurance if it binds the insurer to indemnify the insured for loss of identifiable property described either specifically or by general language, such as property in a certain place or within the possession of the insured. If the contract describes property in a certain place and some of the property in that place is not owned by the insured, but is in the custody

5. California Ins. Co. v. Union Compress Co., 133 U.S. 387, 10 S.Ct. 365, 33 L.Ed. 730 (1889); Home Insurance Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868 (1876); Hudiburg Chevrolet, Inc. v. Globe Indem. Co., 394 S.W. 2d 792 (Tex.Sup.1965); Germania Ins. Co. v. Anderson, 15 Tex.Civ.App. 551, 40 S.W. 200 (Fort Worth 1897, no writ) (suit by owner as assignee of insured bailee); Rouse v. Albany Ins. Co., 257 N.C. 267, 125 S.E.2d 424 (1962); Penn v. Commercial Union Fire Ins. Co., 233 Miss. 178, 101 So.2d 535, 67 A.L.R.2d 1238 (1958).

6. The distinction between insurance on property and personal indemnity insurance covering the dishonest acts of the insured's employees was considered controlling in American Empire Ins. Co. v. Fidelity & Deposit Co. of Maryland, 408 F.2d 72 (5 Cir. 1969), under a contract containing language similar to that now before us, but in that case the loss in question was a shortage of funds and no identifiable property was involved. On this ground the court distinguished bailor-bailee cases, such as Globe & Rutgers Fire Ins. Co. v. United States, 202 F.2d 696 (5 Cir. 1953) and also United States Fid. & Guar. Co. v. Slifkin, 200 F.Supp. 563 (N.D.Ala.1961). In Slifkin the bailor was held entitled to recover for property taken from the insured bailee in a robbery under an insuring clause almost identical with that now before us. In American Empire the court noted that bailors are generally allowed to sue as third-party beneficiaries under such contracts and that such a clause is interpreted to insure the bailor's interest in the property, irrespective of the bailee's legal liability for loss. We regard Slifkin as more nearly in point here than American Empire.

7. Fire Ass'n of Philadelphia v. Strayhorn, 211 S.W. 447 (Tex.Comm'n App.1919, holding approved); Anderson v. Group Hospitalization, Inc., 203 A.2d 421 (D. C.App.1964); Mutual Benefit Health & Accident Ass'n v. Bullard, 270 Ala. 558, 120 So.2d 714 (1960); State ex rel. Duffey v. Western Auto Supply Co., 134 Ohio St. 163, 16 N.E.2d 256, 119 A.L.R. 1236 (1938); Hunt v. New Hampshire Fire Underwriters Ass'n, 68 N.H. 305, 38 A. 145 (1895).

8. Springfield Fire & Marine Ins. Co. v. Boon, 194 S.W. 1006 (Tex.Civ.App., Texarkana 1917, writ ref'd); 3 Couch, Insurance § 24:12 (1960); 4 Appleman, Insurance Law and Practice, § 2121 (1969).

9. Carpenter v. Providence Washington Ins. Co., 41 U.S.(16 Pet.) 495, at 503, 10 L.Ed. 1044 (1842); Northern Trust Co. v. Snyder, 76 F. 34 (7 Cir. 1896); Crook v. Hartford Fire Ins. Co., 175 S.C. 42, 178 S.E. 254 (1935).

10. Martin v. Zurich General Accident & Liability Ins. Co., 13 F.Supp. 162 (D.R.I. 1935); United States Fidelity & Guaranty Co. v. Williams, 148 Md. 289, 129 A. 660 (1925).

of the insured as bailee, the question arises as to whether the insurer has agreed to indemnify the insured only for loss of property in which he has a pecuniary interest or extends to loss of property in which he has an insurable interest because of his duty as bailee to account to the owner. This question must be determined by looking to the contractual language defining the property covered. Here the contract covers loss of property "within the premises" of the insured, and "property" is defined to include not only property in which the insured has a pecuniary interest, but also property "held by the Insured in any capacity whether or not the Insured is liable therefor." This language cannot reasonably be construed as limiting the property covered to the insured's pecuniary interest or to money paid out by the insured as a result of the loss.

This construction is in accordance with Hudiburg Chevrolet, Inc. v. Globe Indem. Co., 394 S.W.2d 792 (Tex.Sup.1965), which involved a suit by an insured automobile dealer for the value of a truck stored with it and stolen from its premises. The original policy was in the usual language of liability insurance binding the insurer to pay all sums which the insured should be legally obligated to pay because of injury to or destruction of property. An endorsement provided, "this policy is extended to cover for direct loss of or damage * * * by theft * * * to automobiles which are the property of others and in the custody of the insured for storage, repair or safekeeping, * * * regardless of the legal liability of the insured." The Supreme Court held that the insured bailee was entitled to recover the market value of the truck but that recovery would be limited to the amount the bailee had paid out to a mortgagee because that was all it had prayed for. The court based this holding on the general rule that contract provisions covering property contained in specified places and for which the insured is liable are held to insure against loss of the property and not to indemnify the insured against his legal responsibility in tort or by contract to the owner of the property, and the court observed that this rule permits the insured bailee to sue for all the losses and then account to the owner.

■ We turn now to the second question above stated concerning the right of the bank to recover as third-party beneficiary. This question also may be determined from the language of the contract if the contract expresses the parties' intention. Thus, if a contract of insurance is expressly made "for the benefit of whom it may concern," the owner of the property described in the contract may recover on it as a third-party beneficiary.[11] On the other hand, no such right exists if the contract expressly excludes the right of any third person to bring an action on it.[12] Since the present contract makes no express provision one way or the other, we must determine the bank's right to enforce it by general principles of contract law in the light of decisions involving insurance contracts.

■ Authorities recognize that a third party who would be benefited by performance of a contractual promise may enforce that promise by suit if he is a donee beneficiary or a creditor beneficiary, but not if he is only an incidental beneficiary.[13] Dis-

11. Hagan v. Scottish Union & Nat'l Ins. Co., 186 U.S. 423, 22 S.Ct. 862, 46 L.Ed. 1229 (1902); Automobile Ins. Co. v. Barnes-Manley Wet Wash Laundry Co., 168 F.2d 381 (10 Cir. 1948, cert. denied 335 U.S. 859, 69 S.Ct. 132, 93 L.Ed. 406); Aetna Ins. Co. v. Eisenberg, 294 F.2d 301 (8 Cir. 1961); 5A Appleman, Insurance Law and Practice, § 3336 (1969).

12. Lloyds America v. Brooks, 129 Tex. 543, 105 S.W.2d 660 (1937); Kuntz v. Spence, 67 S.W.2d 254 (Tex.Comm'n App.1934, holding approved); Luger v. Windell, 116 Wash. 375, 199 P. 760, 37 A.L.R. 641 (1921).

13. Republic Nat'l Bank v. National Bankers Life Ins. Co., 427 S.W.2d 76 (Tex. Civ.App., Dallas 1968, writ ref'd n. r. e.); Restatement, Contracts §§ 133, 147 (1932); 4 Corbin, Contracts §§ 774, 779C (1951); 2 Williston, Contracts, 3d Ed. § 356 (1959).

tinctions between these categories are not always clear. If performance of the promise would satisfy an actual or supposed or asserted duty of the promisee to the third party, and no intention to make a gift appears, the third party is a creditor beneficiary.[14] This principle has been applied to insurance contracts in numerous cases holding that the owner of identifiable property which has been insured for its full value by a bailee, trustee or agent, may recover in a direct action against the insurer, though the contract contains no language expressly stating that the loss is payable to the owner or that the contract is made for his benefit.[15]

Few courts have attempted a logical analysis of the basis for such direct recovery in insurance cases. Though the owner has been said to be a donee beneficiary[16] we think it more reasonable to treat him as a creditor beneficiary, if the distinction is of any importance,[17] because of the duty of the insured bailee to account to the owner for the property.[18] Performance by the insurer of its contractual promise to pay to the insured bailee the full amount of the loss may not actually discharge the bailee's duty to account, but it will do more than merely provide funds from which the insured may discharge that duty.[19] It will create an independent right of action in favor of the owner for the proceeds, regardless of any other ground of liability he may have against the insured, since the insured would then hold the proceeds for the benefit of the owner.[20] This new and beneficial legal relationship is a sufficiently direct benefit to give the owner the right to enforce performance of the contract.[21]

In the present case, the credit union had an express contractual duty to ac-

14. Restatement, op. cit. *supra* note 13, § 133; Corbin, op. cit. *supra* note 13, § 787; Williston, op. cit. *supra* note 13 at 787; Williston, op. cit. *supra* note 13, § 361.

15. Globe & Rutgers Fire Ins. Co. v. United States, 202 F.2d 696 (5 Cir. 1953); Insurance Co. of North America v. United States, 159 F.2d 699 (4 Cir. 1947); American Eagle Fire Ins. Co. v. Gayle, 108 F.2d 116 (6 Cir. 1939); American Central Ins. Co. v. Crespi & Co., 218 S.W.2d 269 (Tex.Civ.App., Austin 1949, no writ); Hartford Fire Ins. Co. v. Evans, 255 S.W. 487 (Tex.Civ.App., Amarillo 1923, no writ); United States Fid. & Guar. Co. v. Slifkin, 200 F.Supp. 563 (N.D.Ala.1961) (provision almost identical to present contract); Stilwell Frozen Foods, Inc. v. North British & Mercantile Ins. Co., 184 F.Supp. 629 (W.D. Ark.1960); Millers Nat'l Ins. Co. v. Bunds, 158 Kan. 662, 149 P.2d 350 (1944); Brugioni v. Maryland Cas. Co., 382 S.W.2d 707 (Mo.1964); Richartz v. Martin, 252 Wis. 108, 31 N.W.2d 158 (1948); Pacific Fire Ins. Co. v. Murdoch Cotton Co., 193 Ark. 327, 99 S.W.2d 233 (1936); Exton & Co. v. Home Fire & Marine Ins. Co., 249 N.Y. 258, 164 N.E. 43, 61 A.L.R. 718 (1928).
 *Contra:* Central States Grain Co-op. v. Nashville Warehouse & Elevator Corp., 48 F.2d 138 (7 Cir. 1931); Fidelity & Deposit Co. of Maryland v. Reed, 108 S.W.2d 939 (Tex.Civ.App., San Antonio 1937, no writ); LaSalle Extension University v. B. F. Shaw Printing Co., 62 Ill.App.2d 391, 210 N.E.2d 840 (1965); London Assurance v. Bigeleisen, 135 N.J. Eq. 564, 39 A.2d 494 (1944); Allen v. Massachusetts Bonding & Ins. Co., 218 Iowa 294, 253 N.W. 498 (1934).

16. Stilwell Frozen Foods, Inc. v. North British & Mercantile Ins. Co., 184 F. Supp. 629 (W.D.Ark.1960).

17. See Corbin, op. cit. *supra* note 13, §§ 779C, 795.

18. Globe & Rutgers Fire Ins. Co. v. United States, 202 F.2d 696 (5 Cir. 1953); Germania Ins. Co. v. Anderson, 15 Tex. Civ.App. 551, 40 S.W. 200 (Fort Worth 1897, no writ).

19. A contract to provide a debtor with funds to pay creditors does not give a creditor the right to enforce the contract. Republic Nat'l Bank v. National Bankers Life Ins. Co., 427 S.W.2d 76 (Tex.Civ. App., Dallas 1968, writ ref'd n. r. e.); Corbin, op. cit. *supra* note 13, § 779D.

20. Southern Cold Storage & Produce Co. v. A. F. Dechman & Co., 73 S.W. 545 (Tex.Civ.App., San Antonio 1903, no writ); Johnston v. Charles Abresch Co., 123 Wis. 130, 101 N.W. 395 (1904); Boyd v. McKee, 99 Va. 72, 37 S.E. 810 (1901).

21. Corbin, op. cit. *supra* note 13, § 775.

count to the bank for the checks. In the "trust receipt" signed by the credit union, it expressly "agrees and undertakes that said checks while in its custody shall have the same care and protection as its bearer securities," and the credit union further agrees to account to the bank for the proceeds of all checks sold. Whether the credit union has breached this duty to account is not the issue, since the society's obligation arises "whether or not the Insured is legally liable therefor." We hold that the duty of the insured credit union to account to the bank for these checks is sufficient to establish the right of the bank to enforce the contract as a creditor beneficiary.

We make no attempt to reconcile this holding with Fidelity & Deposit Co. of Maryland v. Reed, 108 S.W.2d 939 (Tex. Civ.App., San Antonio 1937, no writ), in which a similar contract was construed not to provide coverage for the purchaser of shares of stock held by an insured securities dealer and stolen by one of its employees before they could be delivered. The San Antonio court of civil appeals followed the decision of the Supreme Court of Iowa in Allen v. Massachusetts Bonding & Ins. Co., 218 Iowa 294, 253 N.W. 498 (1934). In both *Reed* and *Allen,* the decision turned on the distinction between a contract of indemnity against loss and a contract of indemnity against liability,[22] and both courts seem to have assumed that the insured sustained no loss because it did not own the property stolen. Apparently no argument was presented in either case to the effect that the contract covered property held by the insured as bailee and that the insured sustained a loss of that property, for which it was entitled to indemnity for the benefit of both itself and the owner.

The *Reed* opinion does not state clearly whether the primary ground of decision was that the contract covered only the interest of the insured or that the purchaser had no right to recover as a third-party beneficiary. If the ground was that the contract covered only the interest of the insured, then, in our opinion, the court failed to give full effect to the language of the contract which, like that now before us, evidences an intention to cover the full value of the property. If the ground was that the named insured could have recovered the full value but the owner could not, then we think the court took too narrow view of the right of a third-party beneficiary to enforce a contract. Such a narrow view is indicated by quotations in the opinion to the effect that parties are presumed to contract for themselves alone and that privity of contract is essential to recovery.[23] Recent authorities have generally dispensed with the requirement of privity for third-party beneficiaries.[24]

In our view, direct recovery by an owner on an insurance contract issued in the name of a bailee is justified by the same reasons supporting recovery by any creditor beneficiary. The reasons are similar to those supporting enforcement of contracts

22. Since we construe the contract before us as indemnifying the insured against loss of property in a specified place owned by the insured and others, we consider it a contract of indemnity against loss, and we have no difficulty in distinguishing authorities holding that no action may be brought directly by an insured third party on a contract indemnifying the insured against liability without first obtaining a judgment against the insured. See Lloyds America v. Brooks, 129 Tex. 543, 105 S.W.2d 660 (1937); Seaton v. Pickens, 126 Tex. 271, 87 S.W.2d 709 (1935); Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482 (1934); Owens v. Jackson-Hinton Co., 217 S.W. 762 (Tex.Civ. App., Dallas 1920, no writ).

23. Citing Cannon Ball Motor Freight Lines v. Grasso, 59 S.W.2d 337 (Tex.Civ.App., San Antonio 1933, affirmed 125 Tex. 154, 81 S.W.2d 482), and Hardin Lumber Co. v. Shepherd, 40 S.W.2d 215 (Tex.Civ. App., Galveston 1931, writ dism'd).

24. Corbin, op. cit. *supra* note 13, § 778; Williston, op. cit. *supra* note 13, § 347 at 797. *See* James Stewart & Co. v. Law, 14ᵗ Tex. 392, 233 S.W.2d 558 (1950).

by the original parties. Enforcement of a contractual promise secures the performance for which the parties have contracted and avoids losses caused by reliance on the promised performance. If the contract is made for the benefit of a third person, he is the person most likely to insist on enforcement because he is directly interested, and litigation is reduced by permitting him to sue the promisor directly rather than requiring him to pursue his remedy, if any, against the promisee and then requiring the promisee to enforce his rights against the promisor.[25] Recognition of the bank's right to enforce the contract as third-party beneficiary does not increase the society's risk in principle, since, under our interpretation of the contract, the loss is covered if the claim is pursued by the credit union for the benefit of the bank, or, as the society concedes, if the credit union pays the bank and then makes claim against the society.

The right of a third-party beneficiary to enforce a contract is a question of substantive law. Consequently, we treated counsel's arguments concerning the bank's "right to sue" without joining the credit union or proceeding first against it, as raising this substantive question, and we regard as inappropriate the society's plea in abatement praying for dismissal rather than final judgment.

Since we hold that the bank may recover on the contract as third-party beneficiary, we overrule the appellant's first six points, which assert that the trial court erred in permitting the bank to recover directly against the society. Appellant's remaining points assert that the summary judgment was erroneous because fact issues exist as to whether the credit union breached any duty to the bank *ex delicto* or *ex contractu*. These points also are overruled because we

have held that liability of the credit union to the bank is immaterial under the terms of this contract.

Affirmed.

25. Corbin, op. cit. *supra* note 13, § 788 at 115, 116. As to whether the insured bailee may be liable to the bailor for failure to pursue a claim against the insurer, see Hartford Fire Ins. Co. v. Evans, 255 S.W. 487 (Tex.Civ.App., Amarillo 1923, no writ); Johnston v. Charles Abresch, 123 Wis. 130, 101 N.W. 395 (1904).